RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0040p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 19-1033

PRABHU RAMAMOORTHY,

*Defendant-Appellant*.

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:18-cr-20027-1—Terrence George Berg, District Judge.

Decided and Filed: February 7, 2020

Before: BATCHELDER, LARSEN, and MURPHY, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:** Shannon M. Smith, Molly S. Blythe, SMITH BLYTHE PC, Bloomfield Hills, Michigan, for Appellant. Amanda Jawad, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

─────────────────

**OPINION**

─────────────────

LARSEN, Circuit Judge. A jury convicted Prabhu Ramamoorthy of sexual abuse after a woman sitting next to him on a flight woke up to find him either inserting or trying to insert his fingers into her vagina. Ramamoorthy appeals his conviction, claiming (1) that his right to a unanimous jury verdict was violated because his indictment was duplicitous, (2) that the statements he made to airport police should have been suppressed because he was never informed of his *Miranda* rights, and (3) that the statements he made to the FBI after arrest should

have been suppressed because he did not validly waive his *Miranda* rights.  Because his claims are meritless, we AFFIRM.

I.

Ramamoorthy, an Indian citizen and H-1B visa holder living in the United States, took a redeye flight leaving Las Vegas on January 2, 2018 and landing in Detroit in the early hours of January 3.  He sat between his wife and another woman, Laura.[1]  According to Laura, she initially slept on the flight, but suddenly awoke to find her pants unbuttoned and unzipped and Ramamoorthy shoving his fingers in and out of her vagina.  She texted her boyfriend that "the guy next to me had his hands down my pants and in my vagina."  She then left her seat, went to the back galley, and told the flight attendants what had happened.

Upon landing, the flight crew escorted Laura off the plane first and then Ramamoorthy.  Sergeant Alvarado and Corporal Hunter of the airport police met Ramamoorthy in the jetway as he came off the plane.  Sergeant Alvarado asked Ramamoorthy, "What's going on today?"  In response, and without further questioning, Ramamoorthy immediately began talking about Laura, claiming that she fell asleep on him and that he did not know where he had put his hands.  He also said he was very tired on the flight because he had taken some Tylenol.  Sergeant Alvarado then led him into the airport terminal, where they continued to talk in an area open to the public.

Another officer, Officer Chalmers, whose body camera footage is also in the record, then came to the scene and asked Ramamoorthy some questions about what had happened on the flight, to which he gave similar answers.  At the end of their conversation, Ramamoorthy made a written statement of his recollection.  In the statement, he repeated that Laura had slept on him, that he had been in a "deep sleep," and that he did not remember where he had put his hands.

The officers then arrested Ramamoorthy and took him to the airport police station, where two FBI agents interviewed him for a little over an hour.  Before asking Ramamoorthy any questions about the flight, the agents provided him with a written *Miranda* waiver form.

[1]The parties agreed not to reveal the name of the victim.  We will follow the district court in referring to her as Laura.

Ramamoorthy signed the form after reading his rights aloud and discussing them with the agents for about ten minutes.  Ramamoorthy then admitted that he had tried to put his fingers inside Laura's pants.

A grand jury charged Ramamoorthy with one count of sexual abuse in violation of 18 U.S.C. § 2242(2).  The indictment accused Ramamoorthy of both attempted and completed sexual abuse, which carry the same punishment.  *See id.* § 2242.

Before trial, Ramamoorthy moved to suppress the statements he had made to the FBI, claiming that he did not knowingly and intelligently waive his *Miranda* rights because he did not speak English fluently and did not understand that his statements to the agents would be admissible in court.  He did not seek to suppress the statements he made to the airport police in the jetway and terminal.  The district court held a suppression hearing and denied Ramamoorthy's motion.  The court found that Ramamoorthy was an "articulate, natural English speaker" and that the agents had "no contemporaneous reason to believe" that Ramamoorthy did not understand the consequences of waiving his rights.

At trial, the government relied on testimony from Laura, the flight attendants, the airport police officers, and one of the FBI agents, as well as video footage of Ramamoorthy's conversations with the police officers and FBI agents.  Prior to deliberations, the district court read a series of instructions to the jury.  One instruction explained that completed sexual abuse and attempted sexual abuse were two ways of committing the crime of sexual abuse.  It then continued, "In order to return a guilty verdict, all twelve of you must agree that at least one of these has been proved; however, all of you need not agree that the same one has been proved."  The verdict form asked the jurors whether they found Ramamoorthy guilty "[w]ith respect to the charge in Count One of the indictment, which charges the defendant with Sexual Abuse."

After deliberations began, the jury submitted a written question to the court:  "Are there two charges under consideration, i.e., one, Sexual Abuse, two, attempted Sexual Abuse???  The verdict form only includes Sexual Abuse.  Please clarify.  Thank you."  The court called the jurors back into the courtroom and reread its instruction.  The jury again retired and shortly

thereafter returned with a guilty verdict.  The district court sentenced Ramamoorthy to 108 months' imprisonment and five years of supervised release.  He timely appealed.

II.

Ramamoorthy argues that his indictment was duplicitous—that is, it "set[] forth separate and distinct crimes in one count."  *United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007).  He contends that sexual abuse and attempted sexual abuse are two different crimes; therefore, both should not have been charged in Count I.  But Ramamoorthy does not directly challenge the indictment's alleged duplicity on appeal; nor did he raise any such objection before trial, as required by Fed. R. Crim. P. 12(b)(3)(B)(i).  Instead, he grounds his appeal in the Sixth Amendment right to a unanimous jury verdict.  He claims that the jury instructions and verdict form perpetuated the indictment's duplicity, thus permitting the jury to convict without agreeing on whether his crime was attempted or completed sexual abuse.  As Ramamoorthy concedes, however, he did not object to the jury instructions or verdict form at trial either.  So we review only for plain error.  *Kakos*, 483 F.3d at 445.

We may reverse for plain error "only in exceptional circumstances and only where the error is so plain that the trial judge . . . [was] derelict in countenancing it."  *United States v. Fuller-Ragland*, 931 F.3d 456, 459 (6th Cir. 2019) (alterations in original) (quoting *United States v. Carroll*, 26 F.3d 1380, 1383 (6th Cir. 1994)).  To prevail, Ramamoorthy must identify "an '(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings.'"  *United States v. Crawford*, 943 F.3d 297, 308 (6th Cir. 2019) (quoting *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc)).  "Meeting all four prongs is difficult, as it should be."  *United States v. Jackson*, 918 F.3d 467, 482 (6th Cir. 2019) (quoting *Puckett v. United States*, 566 U.S. 129, 135 (2009)).

The Sixth Amendment prevents a federal jury from convicting "in a criminal case unless it unanimously concludes that the Government has proven each element of the charged offense."  *United States v. Hendrickson*, 822 F.3d 812, 822 (6th Cir. 2016).  Because a duplicitous indictment charges multiple crimes in one count, it creates the risk "that a defendant may be

deprived of his right to a unanimous jury verdict," because "a jury might return a guilty verdict on the single count submitted to them without all twelve jurors agreeing that the defendant committed either of the offenses charged within that count." *Kakos*, 483 F.3d at 443. "Where a defendant fails to object to an indictment before trial," however, "the case proceeds under the presumption that the court's instructions to the jury will clear up any ambiguity created by the duplicitous indictment." *Id.* at 444. Ramamoorthy contends that, in his case, that assumption failed, violating his Sixth Amendment rights. But his claim fails at its premise. There was no duplicity because, at least as charged here, sexual abuse and its attempt are not separate crimes.

Ramamoorthy contends that attempted and completed sexual abuse are distinct because, in his view, sexual abuse is a general-intent offense while attempt is a specific-intent offense. Accordingly, he argues, each crime contains an element that the other lacks—completed sexual abuse would require proof of actual penetration, whereas attempt would require proof of specific intent. *See United States v. Davis*, 306 F.3d 398, 416 (6th Cir. 2002) (noting that courts typically conclude that "offenses are separate" for duplicity purposes "if each requires proof of an additional fact that the other does not" (citation omitted)). Thus, he concludes, there is no guarantee that the jury found that the government had proved every element of either offense beyond a reasonable doubt.

To commit a general-intent crime, a defendant must only "intend to do the act that the law proscribes." *United States v. Gonyea*, 140 F.3d 649, 653 (6th Cir. 1998) (quoting *United States v. Phillips*, 19 F.3d 1565, 1576–77 (11th Cir. 1994)). To commit a specific-intent crime, a defendant must "do more than knowingly act in violation of the law." *Id.* He "must also act with the purpose of violating the law." *Id.* "In other words, 'a general intent crime requires the knowing commission of an act that the law makes a crime. A specific intent crime requires additional bad purpose.'" *United States v. Kimes*, 246 F.3d 800, 806–07 (6th Cir. 2001) (quoting *United States v. Kleinbart*, 27 F.3d 586, 592 n.4 (D.C. Cir. 1994)).

Ramamoorthy's argument hangs on a misreading of the statute. He contends that no more is required to prove completed sexual abuse than that the defendant "knowingly" "engage[d] in a sexual act with another person" who was unable to consent. 18 U.S.C. § 2242(2). This argument ignores the statutory definition of "sexual act." Four categories of

conduct constitute a "sexual act" for the purpose of defining sexual abuse. *See id.* § 2246(2). Both the indictment and the district court's instructions charged only one: "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, *with an intent* to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *Id.* § 2246(2)(C) (emphasis added). This category requires specific intent because it requires proof not only of the knowing act of penetration but also of an "additional 'bad purpose.'" *Kimes*, 246 F.3d at 807 (citation omitted); *see United States v. Barcus*, 892 F.3d 228, 232 (6th Cir. 2018) (holding that a "sexual act" under 18 U.S.C. § 2246(2)(D), which contains identical language on intent, requires specific intent).[2] Accordingly, Ramamoorthy could be convicted of completed sexual abuse only upon proof that he "knowingly" penetrated the victim "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify." Conviction of attempted sexual abuse would require proof of the same, excepting penetration. The jury instructions made that clear.

As charged here, then, attempted sexual abuse was a lesser-included offense of completed sexual abuse, because its elements form a subset of the elements of completed sexual abuse. *See United States v. Bradley*, 917 F.3d 493, 508 (6th Cir. 2019) (The "elements" of a lesser-included offense "are identical to part of the elements of the greater offense."). Thus any juror who voted to find Ramamoorthy guilty of the completed offense necessarily found him guilty of the attempt. *Cf. United States v. Ehle*, 640 F.3d 689, 695 (6th Cir. 2011) ("'Receiving' child pornography necessarily requires one to" commit the "lesser-included offense" of "'possess[ing]' that child pornography."). Ramamoorthy's indictment was not duplicitous, and we find no error, plain or otherwise, in the jury instructions or verdict form.

III.

Ramamoorthy next argues that his statements made in the jetway and airport terminal should not have been admitted, because the officers questioned him without first apprising him of his *Miranda* rights. Ramamoorthy did not, however, move before trial to suppress these statements, as required by Fed. R. Crim. P. 12(b)(3)(C) (A motion to suppress evidence must be

---

[2]We express no opinion as to whether a "sexual act" under 18 U.S.C. § 2246(2)(A) or (B) requires specific intent.

made before trial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits."). We must decide how that failure affects our appellate review.

Rule 12 used to provide that "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the [trial] court sets under Rule 12(c) or by any extension the court provides." Fed. R. Crim. P. 12(e) (2002) (repealed 2014). We interpreted this provision to foreclose entirely any appellate review of Rule 12(b)(3) claims, including *Miranda* and other suppression claims, raised for the first time on appeal. *See, e.g.*, *United States v. Reid*, 764 F.3d 528, 533–34 (6th Cir. 2014). With the repeal of Rule 12(e), however, this court no longer "treat[s] the failure to file a motion as a waiver unless the circumstances of the case indicate that the defendant intentionally relinquished a known right." *United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015). Where, as here, no such circumstances exist, we may review the claim for plain error. *Id.*[3]

Although we may review Ramamoorthy's *Miranda* claim for plain error, plain-error review of a forfeited claim is "permissive, not mandatory." *United States v. Olano*, 507 U.S. 725, 735 (1993); *see* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights *may* be considered even though it was not brought to the court's attention." (emphasis added)). We have previously declined to perform plain-error review of a forfeited suppression claim which turns on unresolved questions of fact. *See United States v. Turner*, 602 F.3d 778, 787 (6th Cir. 2010) (declining to review for plain error "without the benefit of a suppression hearing below" because "we cannot meaningfully resolve these issues based on this trial testimony alone"); *United States v. Finch*, 998 F.2d 349, 355 (6th Cir. 1993) (declining to review for plain error because "[a]lthough the facts appear to have been well developed, it is possible that the failure of the defense to raise the issue may have influenced the manner in which the evidence was

---

[3]Our sister circuits do not agree on whether the plain-error standard applies to forfeited Rule 12(b)(3) claims after the 2014 amendment to the Rule. *Compare United States v. Vasquez*, 899 F.3d 363, 372–73 (5th Cir. 2018) (plain-error standard applies), *cert. denied* 139 S. Ct. 1543 (2019), *and United States v. Sperrazza*, 804 F.3d 1113, 1119 (11th Cir. 2015) (same), *with United States v. Guerrero*, 921 F.3d 895, 897 (9th Cir. 2019) (plain-error standard does not apply), *petition for cert. filed* No. 19-6825 (U.S. Nov. 27, 2019), *United States v. Vance*, 893 F.3d 763, 769–70 & n.5 (10th Cir. 2018) (same), *United States v. Walker-Couvertier*, 860 F.3d 1, 9 & n.1 (1st Cir. 2017) (same), *United States v. Fattah*, 858 F.3d 801, 807 (3d Cir. 2017) (same), *United States v. McMillian*, 786 F.3d 630, 636 & n.3 (7th Cir. 2015) (same), *and United States v. Anderson*, 783 F.3d 727, 741 (8th Cir. 2015) (same).

developed"); *see also Sykes v. United States*, 373 F.2d 607, 612–13 (5th Cir. 1966) (refusing to consider a forfeited suppression claim because it would involve undue "speculation" as to the underlying facts), *cited in United States v. Caldwell*, 518 F.3d 426, 431 (6th Cir. 2008).

We have done so with good reason. Suppression claims typically present "fact-oriented issue[s]." *Finch*, 998 F.2d at 355. In this case, for instance, Ramamoorthy asks us to determine whether he was in *Miranda* custody when he exited the airplane. Such an inquiry would require us to consider "the totality of the circumstances," balancing a series of factors, no one of which is determinative, and all of which are highly dependent upon what transpired in the airport that day. *See United States v. Swanson*, 341 F.3d 524, 528–29 (6th Cir. 2003) (listing factors). Courts of appeal are not equipped to decide factual questions in the first instance. *See Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982) ("[F]actfinding is the basic responsibility of district courts, rather than appellate courts . . . ." (first alteration in original) (quoting *DeMarco v. United States*, 415 U.S. 449, 450 n.* (1974)). We do not regularly make findings of fact; outside of exceptional circumstances, we do not consider new evidence; and we never have the benefit of hearing live testimony.

Even setting aside appellate courts' comparative inaptitude for fact finding, any record on which we would base our findings would likely be incomplete or misleading. A trial develops the facts probative of a defendant's guilt or innocence. But those facts are not necessarily, or even often, those essential to resolving a suppression motion. *See Davis v. United States*, 564 U.S. 229, 236–37 (2011) (The exclusionary "rule's sole purpose . . . is to deter future [constitutional] violations," not to ensure an accurate verdict in the case at hand.); *Stone v. Powell*, 428 U.S. 465, 489–90 (1976) (Application of the exclusionary rule "divert[s]" "the focus of the trial, and the attention of the participants therein, . . . from the ultimate question of guilt or innocence."). Moreover, in the absence of a pre-trial suppression motion, the government has neither opportunity "no[r] incentive to develop the factual record on the [suppression] issue." *Caldwell*, 518 F.3d at 431. It follows that the facts before us could easily paint a misleading picture, even if, from behind the appellate bench, they "appear to have been well developed." *Finch*, 998 F.2d at 355; *see also* 6 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.7(e) (5th ed. 2012) (Review of forfeited suppression claims "often

would 'penalize the Government for failing to introduce evidence . . . when defendant's failure to raise an objection before or during trial seemed to make such a showing unnecessary.'" (citation omitted)). In sum, we are unlikely to be able to reconstruct the totality of the circumstances relevant to the suppression question working solely from the evidence introduced at trial, which was aimed at answering a different question.

We do not expect district courts to rule on fact-intensive suppression issues based solely on evidence introduced for other purposes. In fact, the district court is required to hold an evidentiary hearing when a motion to suppress raises genuine issues of material fact. *See United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019); *United States v. Black*, 181 F.3d 104, 1999 WL 357759, at *3–5 (6th Cir. 1999) (table) (District court abused its discretion by not holding suppression hearing because "the defendant has set forth contested issues of fact that bear upon the legality of the search."); *see also United States v. King*, 127 F.3d 483, 486 (6th Cir. 1997) (District court abused its discretion by not holding suppression hearing because "the record contains only sparse references to facts essential to the resolution of this issue."). What would be an abuse of discretion for the district judge, who at least personally witnessed any relevant trial testimony and has experience regularly making findings of fact, cannot be a proper exercise of discretion for the court of appeals. We recognize that suppression claims raising only legal questions may arise from time to time, and in such cases plain-error review might be appropriate. *Cf. United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (holding that the district court did not abuse its discretion by considering the defendant's suppression motion without a hearing because his claim was "entirely legal in nature"). But in the ordinary case, where the defendant's suppression claim hinges on unresolved issues of fact, the more prudent course is to decline to exercise plain-error review.

This is the ordinary case. Ramamoorthy claims that his statements to airport police officers should have been suppressed because he was in custody, but un-*Mirandized*, when they questioned him. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A suspect is in custody if he is subjected to "the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Howes v. Fields*, 565 U.S. 499, 509 (2012). Ramamoorthy alleges that the airport police made him go with them from the jetway to the airport terminal,

intimidated him into responding to their questions, and at one point even commanded him to write out a statement. The government responds that the officers were polite and non-confrontational and that they never restricted Ramamoorthy's freedom of movement. Far from being intimidated into speaking, the government asserts, at several points Ramamoorthy volunteered statements about his conduct without being asked.

As a court of appeals, we are not well suited to resolve these critical disputes of fact in the first instance. And even if we had a mind to, we are not confident that the record accurately reflects the totality of the relevant circumstances. Ramamoorthy relies principally on body camera footage from Sergeant Alvarado and Officer Chalmers, but this footage captures only twelve minutes of an interview that Ramamoorthy testified lasted about half an hour. The video does not include the point when Ramamoorthy gave his written statement. Ramamoorthy also relies on the trial testimony of Officer Chalmers, but Officer Chalmers did not attempt to narrate in detail his entire interaction with Ramamoorthy—most likely because Chalmers had no reason to believe that he was being asked whether Ramamoorthy was in custody. We therefore decline to review Ramamoorthy's forfeited *Miranda* claim for plain error.

IV.

Finally, Ramamoorthy claims that the district court should have suppressed the statements he made to the FBI agents, because he did not knowingly and intelligently waive his *Miranda* rights. Unlike his other *Miranda* claim, Ramamoorthy properly raised this issue below by filing a motion to suppress before trial. We therefore review the district court's conclusions of law de novo and its findings of fact for clear error. *United States v. Ray*, 803 F.3d 244, 265 (6th Cir. 2015). We will find clear error only if, after reviewing the evidence, we are "left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

"Statements made in response to custodial police interrogation must be suppressed unless the suspect first waived his *Miranda* rights 'voluntarily, knowingly and intelligently.'" *United States v. Al-Cholan*, 610 F.3d 945, 954 (6th Cir. 2010) (quoting *Colorado v. Spring*, 479 U.S. 564, 572 (1987)). Waiver is voluntary when "it was the product of a free and deliberate choice

rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). It is intelligent when it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* "To determine whether a waiver is valid, we examine the totality of the circumstances." *Ray*, 803 F.3d at 266. We do so "'primarily from the perspective of the police,' such that where '[the] police had no reason to believe that [the defendant] misunderstood the warnings, . . . there is no basis for invalidating [the] *Miranda* waiver.'" *Al-Cholan*, 610 F.3d at 954 (alterations in original) (quoting *Garner v. Mitchell*, 557 F.3d 257, 263 (6th Cir. 2009) (en banc)).

Ramamoorthy signed a written waiver form that listed his *Miranda* rights. Prior to signing, the agents asked him to read each line of the form out loud and write his initials next to the line if he understood it, which he proceeded to do. At several points, the agents offered explanations of the rights Ramamoorthy had just read out loud, and Ramamoorthy also asked questions about their meaning, which the agents answered. All in all, the agents and Ramamoorthy discussed his rights for nearly ten minutes before he signed the waiver form. The district court found that throughout the interview "Mr. Ramamoorthy appears to understand English and he is easily heard speaking in English clearly." It further found that "Mr. Ramamoorthy asked intelligent questions of the agents about his rights." Having reviewed the video of the interview, we cannot say these findings are clearly erroneous.

Ramamoorthy nevertheless argues that he did not truly understand his rights and the consequences of waiving them because of his impressions of the Indian legal system and his belief that the American system would be similar. At the suppression hearing, he testified that, in his understanding, police in India beat and torture suspects who do not confess to crimes but that only what a suspect later says to a judge, not what he says to the police, is admissible as evidence. Even assuming that Ramamoorthy subjectively believed that he simply had to tell the agents what they wanted to hear, the officers would have had no way of knowing that this was his understanding. Our review of the interrogation video reveals that the officers conducted themselves respectfully and professionally, making no threats and speaking with a calm demeanor. By responding in coherent English, asking thoughtful questions, nodding his head,

and signing his initials after reading each right aloud, Ramamoorthy gave every indication to the agents that he understood his rights and the consequences of waiving them.

Ramamoorthy argues that the fact that he asked when he would go before a judge should have alerted the agents to his subjective belief that his statements to them would be inadmissible in court. We disagree. Ramamoorthy's question makes clear that he did not know what the exact procedure would be after the interview, but it does not follow from this that he did not understand that his statements to the officers would be evidence in court. Moreover, just seconds earlier, Ramamoorthy had read aloud that anything he said could be used against him in court, had nodded his head in apparent understanding, and had written his initials to indicate his understanding. Thus, none of the circumstances that the agents could have observed reasonably suggested that Ramamoorthy had asked about the timing of a judicial proceeding because he believed that only statements made to a judge were admissible evidence.

Because the agents had no reason to believe that Ramamoorthy misunderstood his *Miranda* rights, his waiver of them was knowing, voluntary, and intelligent. Accordingly, the district court did not err in denying Ramamoorthy's motion to suppress.

* * *

For the foregoing reasons, we AFFIRM Ramamoorthy's conviction.