NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0100n.06

No. 23-1220

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Mar 06, 2024

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| EDGAR RANGEL-TAPIA, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: BOGGS, McKEAGUE, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Edgar Rangel-Tapia was convicted of gun and drug crimes. He argues that there was insufficient evidence to support the convictions and that one of the charges was unconstitutional. We AFFIRM.

I.

In April 2021, Immigration and Customs Enforcement (ICE) officers executed a search warrant at a home in Pontiac, Michigan. The warrant authorized the officers to search the home for documents related to a third-party's immigration status. The officers knocked and announced their identity and purpose for being there, and Rangel-Tapia answered the door. He was home alone. There were four cars parked at the home—all registered to Rangel-Tapia. He stepped outside while the officers performed a protective sweep of the home.

In the larger of the home's two bedrooms, officers found a safe with its door wide open. Inside the safe, in plain view, officers saw what appeared to be cocaine, marijuana, and cash. They

also saw a phone charging on top of the safe, a wallet on a nearby dresser, and a shotgun barrel sticking out from behind the dresser. Because the guns and drugs were beyond the scope of the search warrant, the officers contacted the Federal Bureau of Investigation (FBI) and turned the investigation over to them.

An FBI agent read Rangel-Tapia his *Miranda* rights and asked him whether there were any firearms in the home. Rangel-Tapia signed a *Miranda* waiver and responded that there was a gun in the safe and gestured toward the larger of the two bedrooms. The agent asked Rangel-Tapia whether he knew the combination to the safe—though it was already open. Rangel-Tapia replied that he had forgotten it.

The FBI obtained a search warrant for "drugs, ammunition, weapons," and related evidence. R. 58, Jury Trial Tr., Nov. 3, 2022, PageID 389. Inside the safe, agents found bags of cocaine, containers of marijuana, a .38-caliber revolver and ammunition, a drug-diluting agent, a small scale, and $9,000 in cash. The wallet on the nearby dresser contained Rangel-Tapia's driver's license, various bank cards in his name, and a card in his daughter's name. Agents also found a file folder in the bedroom containing tax and immigration documents bearing Rangel-Tapia's name, various receipts, bills, and recent paystubs with his name and phone number, as well as the results of a DNA test proving Rangel-Tapia's paternity of his daughter. Hanging on the walls of the bedroom were a photograph of Rangel-Tapia and his daughter, and one of his daughter's paintings.

Agents seized the phone on top of the safe and extracted its data. The phone number matched that on Rangel-Tapia's official immigration casefile. The data extract revealed recent messages consistent with drug transactions: "Need some flower." R. 59, Jury Trial Tr., Nov. 4,

2022, PageID 447. "How much bud you want?" *Id.* "Do you have any soft?" *Id.* at 452. "Gram for a hundo." *Id.* at 453.

The United States brought three charges against Rangel-Tapia: (1) possession with intent to distribute controlled substances, 21 U.S.C. § 841(a)(1); (2) possession of a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c); and (3) being an alien unlawfully in the United States in possession of a firearm, 18 U.S.C. § 922(g)(5)(A). At trial, the United States presented evidence of the facts recounted above. That included testimony from ICE officers and FBI agents, and various exhibits recovered from the scene. Rangel-Tapia was convicted on all counts. The district court sentenced him to sixty-six months' imprisonment. He now appeals.

II.

Rangel-Tapia raises two issues on appeal. First, he argues that the evidence at trial was insufficient to support the convictions. Second, he argues that 18 U.S.C. § 922(g)(5)(A) is unconstitutional as applied to him. He is not entitled to relief on either ground.

A.

We review the sufficiency of evidence de novo, viewing the evidence in the light most favorable to the government. *United States v. Clark*, 24 F.4th 565, 571–72 (6th Cir. 2022). We ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Rangel-Tapia argues that there was insufficient evidence that he knowingly possessed the guns and drugs. There are two forms of possession: actual and constructive. *See United States v. Gardner*, 488 F.3d 700, 713 (6th Cir. 2007). Actual possession requires that a person have direct physical control over something. *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1977). Constructive

possession requires only that a person "knowingly ha[ve] the power and the intention at a given time to exercise dominion and control" over an item, whether directly or indirectly. *Id.* It is enough that a person has "dominion" over the place where the item is located. *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir. 1993).

There was ample evidence that Rangel-Tapia constructively possessed the guns and drugs found in and around the bedroom safe. Rangel-Tapia's phone was charging on top of the safe. His driver's license and bank cards were in a wallet on the dresser next to the safe. His tax and immigration documents, receipts, bills, paystubs, and DNA test results were also in the bedroom. Hanging on the bedroom walls were a photo of Rangel-Tapia and his daughter, and one of his daughter's paintings. Rangel-Tapia was the only person home, where four cars, all registered to him, were parked. And he told an FBI agent that a gun was in the safe and that he had "forgotten" the combination—not that he did not know it. R. 58, Jury Trial Tr., Nov. 3, 2022, PageID 388. The guns' and drugs' presence in a bedroom that Rangel-Tapia actively used, alongside his personal belongings, is enough evidence for a rational trier of fact to conclude, beyond a reasonable doubt, that Rangel-Tapia knowingly had the power and intention to exercise dominion and control over the guns and drugs. *See United States v. Latimer*, 16 F.4th 222, 226 (6th Cir. 2021).

We encountered similar facts in *United States v. Jenkins*, 593 F.3d 480 (6th Cir. 2010). Jenkins was present in a home where guns and drugs were found. *Id.* at 483. He told police officers that he lived there, but that others had free access to the home. *Id.* "In the house's only bedroom, officers found Jenkins's drivers license, pay stubs, bank cards, work-ID badge, numerous bags of marijuana—including one on a nightstand next to his drivers license—digital scales, and a loaded .38 caliber pistol." *Id.* "This evidence easily permitted the jury to find that

Jenkins had the power and intention to exercise control over the guns and drugs in the house." *Id.* at 484. So too here.

Rangel-Tapia argues that this case is different because there is no evidence that he "frequented" the home—let alone possessed the guns and drugs. Appellant Br. at 10. That position is irreconcilable with the overwhelming evidence introduced at trial. Rangel-Tapia dismisses that evidence as "several items" "with [his] name on them," *id.* at 14, and he argues that *United States v. Lowe*, 795 F.3d 519 (6th Cir. 2015), supports his position. It does not. In that case, child pornography was found on a laptop in a home shared by husband-and-wife James and Stacy. *Id.* at 520. The laptop, which was not password protected, was named "Jamie-PC" and "Jamie" was the only username. *Id.* at 521. The laptop was found in an office alongside documents listing James's name, social-security number, birthdate, and e-mail address. *Id.* This court concluded that there was sufficient evidence that James owned and used the laptop. *Id.* at 523. In other words, that he possessed it. But there was insufficient evidence that James "knowingly downloaded, possessed and distributed" the child pornography found on the laptop because Stacy, and perhaps another person, also had access to the laptop, the child pornography was not stored in James's "personal files," and the child pornography would not have been apparent to someone merely "using the laptop for innocent purposes." *Id.* at 523–25.

The reasoning in *Lowe* does not apply here. *See United States v. Johnson*, 658 F. App'x 236, 242 (6th Cir. 2016) ("To the extent that analogizing to a laptop is appropriate at all, Johnson's bedroom and dresser [where the gun was found] would be akin to a personal folder on a laptop.") This case is controlled by *Jenkins*, 593 F.3d at 484, and *Latimer*, 16 F.4th at 226, which make clear that a rational trier of fact could conclude that Rangel-Tapia knowingly possessed the guns and drugs.

B.

Rangel-Tapia next argues that 18 U.S.C. § 922(g)(5)(A), which makes it illegal for those unlawfully present in the United States to possess firearms, is unconstitutional under the Second Amendment after the Supreme Court's decision in *New York State Rifle and Pistol Association v. Bruen*, 597 U.S. 1 (2022)—at least as applied to him. Rangel-Tapia did not make this argument in the district court. As a result, we review his challenge for plain error. *United States v. Al-Maliki*, 787 F.3d 784, 791 (6th Cir. 2015); *see* Fed. R. Crim. P. 52(b). To succeed on plain-error review, Rangel-Tapia "must identify an '(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Ramamoorthy*, 949 F.3d 955, 960 (6th Cir. 2020) (citation omitted). "Meeting all four prongs is difficult, as it should be." *Id.* (citation omitted). This case turns on the obvious-or-clear requirement. "An error is clear or obvious only when the law is settled, rather than subject to reasonable dispute." *United States v. Kechego*, 91 F.4th 845, 850 (6th Cir. 2024) (citations and internal quotation marks omitted). The law is subject to reasonable dispute unless the "question presented" is answered by "binding case law." *Al-Maliki*, 787 F.3d at 794; *see also United States v. Cavazos*, 950 F.3d 329, 337 n.3 (6th Cir. 2020). That includes "intervening authority unavailable at the time of the relevant proceedings." *United States v. Raymore*, 965 F.3d 475, 485 (6th Cir. 2020) (citing *Henderson v. United States*, 568 U.S. 266, 273–74 (2013)).

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Bruen*, the Supreme Court recognized the right of "ordinary, law-abiding citizens . . . to carry handguns publicly for their self-defense." 597 U.S. at 8–9. In so doing, the

Court clarified the two-part test for assessing Second Amendment claims. *Id.* at 17. Courts must ask: (1) whether "the Second Amendment's plain text covers an individual's conduct," and, if so, (2) whether "the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* Like most of our sister circuits, we previously applied a different test, which *Bruen* abrogated. *See United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012).

As Rangel-Tapia acknowledges, however, *Bruen* itself did not address "the constitutionality of criminal firearm statutes like § 922(g)(5)(A)." Appellant Br. at 15. And neither this court, nor any other circuit court, has held that statute to be unconstitutional, either before or after *Bruen*. *See United States v. Sitladeen*, 64 F.4th 978, 983–84, 987 (8th Cir. 2023) (collecting cases and upholding the statute post-*Bruen*). When, as in this case, "[n]o circuit court has declared [the statute] unconstitutional" and "[n]o binding law . . . in our circuit" answers the question presented, there can be no plain error. *Al-Maliki*, 787 F.3d at 794.

* * *

We AFFIRM.