NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0625n.06

Case No. 16-4031

**FILED**
Nov 09, 2017
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| RAPHAEL D. PERSON, JR., | ) | OHIO |
| | ) | |
|     Defendant-Appellant. | ) | |

BEFORE: CLAY, ROGERS, and SUTTON, Circuit Judges.

CLAY, Circuit Judge. Defendant Raphael D. Person Jr. appeals his conviction and sentence for three violations of the Hobbs Act, 18 U.S.C. § 1951(a), and two counts of using or carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). For the reasons set forth below, we **AFFIRM** Person's conviction but **REMAND** for resentencing.

**BACKGROUND**

Beginning in 2011, Person and others conspired to rob people selling cars through Craigslist, an online marketplace. They devised a scheme to respond to car advertisements, pay for cars in cash, and then "rob the money back." They committed two such robberies, one in 2011 and another in 2012.

In the 2011 robbery, one of Person's accomplices, Ricardo Velasquez-Flores, responded to a Craigslist advertisement for a 2002 Acura RSX owned by Cedo Zecevic and his son, Slobadan. The Zecevics later sold the Acura to Velasquez-Flores in a parking lot for $5,900 in cash.

While the Zecevics drove home (in a different car), they were secretly followed by Person and another accomplice, Mickey Velazquez. When the Zecevics got out of the car, they were confronted by Person and Velazquez, who were carrying AR-15 assault rifles. The gunmen claimed to be police officers and demanded money that they said had been obtained through a drug sale. At one point, Person shot his rifle into the air, to intimidate the Zecevics. The Zecevics handed over the $5,900 they had received for the Acura, and the robbers fled.

In the 2012 robbery, Velazquez responded to a Craigslist advertisement for a Nissan 350Z. The sellers, Mark Gillespie and his father, also named Mark Gillespie, met Velazquez and another accomplice in a warehouse. The sellers were paid $18,000 in cash for the car. As they left the warehouse, they were confronted by Person and his brother, armed with AR-15s. The gunmen claimed to be Drug Enforcement Agents and told the Gillespies to turn over "the drugs" and "the [drug] money." One of the gunmen shot into the air to intimidate the Gillespies. Later, Person "hit [the son] with the butt of the gun" on the "base of [the son's] head and neck area." The blow caused the son "to stumble halfway to the ground," but did not require medical attention. The robbers took the $18,000 payment for the Nissan and fled.

### Procedural History

In 2013, Person was charged with the following five crimes:

- Count 1: Conspiracy to commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (based on both robberies);

- Count 2: Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (based on the 2011 robbery);

- Count 3: Discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (based on the 2011 robbery);

- Count 4: Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (based on the 2012 robbery); and

- Count 5: Discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (based on the 2012 robbery).

At trial, the jury heard testimony from three of Person's co-conspirators (including Velazquez and Velasquez-Flores), the Zecevics, the Gillespies, and law enforcement officials. At the close of evidence, Person moved for acquittal under Federal Rule of Criminal Procedure 29, arguing that the government had "failed to prove or to present sufficient evidence of proof from which any rational[] juror could conceive beyond a reasonable doubt that . . . Person . . . is guilty of each and every count of the Indictment." The district court denied the motion.

Before summation, the parties stipulated that

Craigslist . . . i[s] an internet service provider, headquartered in San Francisco, CA, and on or about [the dates of the robberies], it was engaged in commercial activities that affected interstate commerce, that is, Craigslist provided internet users the ability to post items for sale on its website, which was on and/or within the internet.

(R. 155, stipulation, PageID # 667.) The stipulation was read to the jury. Later, Person was found guilty on all counts.

In calculating a guidelines sentencing range for the Hobbs Act offenses, the Presentence Investigation Report (PSR) noted that Person had hit Gillespie (the son) with a gun. Accordingly, the PSR applied a two-point offense-level increase for causing "bodily injury." *See* U.S.S.G. § 2B3.1(b)(3)(A). Person objected, arguing that there "was no indication that

[Gillespie] suffered any bruising, swelling, soreness, headaches or other ailment as a result of the strike to his head and neck . . . ." The district court overruled the objection, explaining that

> the [application] note to the guidelines defines bodily injury as, quote, any significant injury, and then it gives examples. For instance, it says an injury that is painful or obvious or is of the type for which medical attention ordinarily would be sought. . . .
>
> Now, Mr. Gillespie testified at trial that he, quote, was hit with the butt of the gun . . . [at] the base of the head and neck area. And . . . [that] it was enough to stumble me halfway to the ground, end quote. He did not go to the hospital, but . . . this evidence is sufficient to establish that Mr. Gillespie sustained a, quote, significant injury. Being hit with the butt of a gun at the lower head and neck area with sufficient force to compel him halfway to the ground would . . . result in a painful and obvious injury.

(R. 195, sentencing tr., PageID # 1611–12.)

With the bodily-injury enhancement, Person's final offense level for the Hobbs Act offenses was 24. Given his criminal history category of IV, this yielded a guidelines range of 77 to 96 months' imprisonment. Without the enhancement, his guidelines range would have been 63 to 78 months' imprisonment.

The district court sentenced Person to 86 months' imprisonment on the Hobbs Act counts. It also sentenced him to 10 years' imprisonment on the first § 924(c) count and to 25 years' imprisonment on the second § 924(c) count. Each § 924(c) sentence reflected the mandatory minimum. *See* 18 U.S.C. § 924(c)(1)(A)(iii) (first § 924(c) conviction yields 10-year mandatory minimum if a gun was discharged); § 924(c)(1)(C)(i) (second § 924(c) conviction yields 25-year mandatory minimum). By statute, the sentences for the § 924(c) counts had to be imposed consecutively to each other and to the sentence for the Hobbs Act counts. § 924(c)(1)(D)(ii). Consequently, Person's aggregate sentence was 506 months' imprisonment. This timely appeal followed.

## ANALYSIS

### I.      Hobbs Act Offenses

There was sufficient evidence to support Person's Hobbs Act convictions, notwithstanding Person's argument that the government did not introduce enough evidence to prove the commerce element.

#### A.      Standard of Review

"We review a challenge to the sufficiency of the evidence supporting a criminal conviction *de novo*." *United States v. Collins*, 799 F.3d 554, 589 (6th Cir. 2015). "In evaluating such a challenge, we are tasked with determining 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original)).

#### B.      Analysis

The Hobbs Act provides that

> [w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a).

The Act defines "commerce" as

> commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

§ 1951(b)(3). The Act's broad language "exercise[s] the full measure of Congress's commerce power," while ensuring "that applications of the Act do not exceed Congress's authority" under the Commerce Clause. *Taylor v. United States*, 136 S. Ct. 2074, 2081 (2016).

> To determine how far this commerce element extends—and what the Government must prove to meet it—[a court should] look to [the Supreme Court's] Commerce Clause cases. . . . [Specifically,] there are three categories of activity that Congress may regulate under its commerce power: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce, . . . i.e., those activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558–59 (1995). . . . [A]ctivities in this third category—those that "substantially affect" commerce— may be regulated so long as they substantially affect interstate commerce in the aggregate, even if their individual impact on interstate commerce is minimal.

*Id.* at 2079.

The government proved the commerce element in this case by showing that Person's crimes involved the internet, which is a channel of interstate commerce. *See, e.g.*, *United States v. Chambers*, 441 F.3d 438, 450 (6th Cir. 2006) (stating that "channels of interstate commerce" were "utilized" where defendant sent illicit images over the internet); *United States v. Horne*, 474 F.3d 1004, 1006 (7th Cir. 2007) ("eBay, the online auction site, is an avenue of interstate commerce, like an interstate highway or long-distance telephone service."); *United States v. Tykarsky*, 446 F.3d 458, 470 (3d Cir. 2006) ("[T]he Internet . . . is both an instrumentality and channel of interstate commerce." (quotation marks and citation omitted)). Specifically, the trial evidence showed that Person and his accomplices chose targets based on Craigslist advertisements. In addition, the parties stipulated that Craigslist is an online marketplace that "provid[es] internet users the ability to post items for sale on its website." Therefore, the jury heard evidence that the robberies involved a channel of interstate commerce, i.e., the internet.

## II.  Sentencing Enhancement for Causing "Bodily Injury"

The district court did not err in applying a two-point offense-level increase for causing bodily injury.

### A.  Standard of Review

"In reviewing a district court's application of the Sentencing Guidelines, this Court will accept the findings of fact of the district court unless they are clearly erroneous and will give due deference to the district court's application of the Guidelines to the facts.  A factual finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.  We review a district court's legal conclusions regarding the Sentencing Guidelines *de novo*."  *United States v. Moon*, 513 F.3d 527, 539–40 (6th Cir. 2008) (quotation marks, citations, and alteration omitted).

### B.  Analysis

The guidelines require a two-point offense-level increase if "any victim sustained bodily injury . . . ."  U.S.S.G. § 2B3.1(b)(3)(A).  "'Bodily injury' means any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought."  U.S.S.G. § 1B1.1 application note 1(B).

Here, Mark Gillespie (the son) testified that Person "hit [him] with the butt of the gun" at the "base of the head and neck area."  He further testified that the hit made him "stumble halfway to the ground," but did not require medical attention.  This Court has upheld applications of the "bodily injury" guideline in similar circumstances.  *United States v. Davenport*, 30 F. App'x 338, 340 (6th Cir. 2002) ("The district court did not err in holding that a blow to the head with a gun is 'significant' within the meaning of the sentencing guidelines."); *United States v. Austin*, 81 F.3d 161 (Table), 1996 WL 109500 at *12 (6th Cir. 1996) ("[I]t is

'obvious' that someone struck on the head with a gun, unless their head is well-protected, will experience some degree of pain. It is true that the proof presented at a sentencing hearing must satisfy the preponderance of the evidence standard, but this standard is met where an assumption of pain is perfectly rational under the circumstances." (citation omitted)). Consequently, there was no error here, especially given the due deference afforded to the district court's application of the guidelines to the facts. *See Moon*, 513 F.3d at 539–40.

Person argues that the district court improperly focused on his action (hitting Gillespie) rather than its result (whether Gillespie was injured). But the district court did focus on the result: it determined that Gillespie "sustained a . . . significant injury" within the meaning of the guidelines. Person also cites various cases in which the relevant injury was more serious than Gillespie's, and cases from other circuits suggesting that the injury must last for a meaningful period. But as shown above, this Court has upheld applications of the "bodily injury" guideline in cases like this one. In addition, this Court has never held that a "bodily injury" must last for a definable period of time.

## I.      Resentencing under *Dean*

Finally, remand is warranted in light of *Dean v. United States*, 137 S. Ct. 1170 (2017), which held that district courts may consider the existence of § 924(c) mandatory minimums when determining the sentences on other counts.

### A.      Standard of Review

Person did not argue in district court that his Hobbs Act sentence should take into account his lengthy § 924(c) sentences. Therefore, his challenge is reviewed for plain error. *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005). "In reviewing for plain error, we must consider whether there was plain error that affects substantial rights and that, in our

discretionary view, seriously affects the fundamental fairness, integrity, or public reputation of judicial proceedings." *Id.*

### B. Application

At the time of sentencing, binding precedent required sentencing courts to "determine an appropriate sentence for the underlying crimes without consideration of the § 924(c) sentence." *United States v. Franklin*, 499 F.3d 578, 586 (6th Cir. 2007). Consequently, when determining Person's Hobbs Act sentence, the district court could not consider his § 924(c) sentences, which totaled 35 years' imprisonment.

While Person's appeal was pending, however, the Supreme Court decided *Dean*, abrogating the *Franklin* rule. Under *Dean*, a sentencing court *can* consider a defendant's § 924(c) sentence when calculating any remaining sentences. *Id*. at 1175–78.

In light of *Dean*, we remand for resentencing. Person was sentenced to 35 years' imprisonment on the § 924(c) counts. Had the district court known it could consider that period of incarceration when determining Person's Hobbs Act sentence, it may have sentenced Person differently. For example, it might have determined that 35 years' imprisonment on the § 924(c) counts was sufficient to "protect the public" and "afford adequate deterrence," thus warranting a more lenient sentence on the Hobbs Act counts. Indeed, the Supreme Court made a similar observation in *Dean*, explaining that

> Dean committed the two robberies at issue here when he was 23 years old. That he will not be released from prison until well after his fiftieth birthday because of the § 924(c) convictions surely bears on whether—in connection with his predicate crimes—still more incarceration is necessary to protect the public. Likewise, in considering "the need for the sentence imposed . . . to afford adequate deterrence," [18 U.S.C.] § 3553(a)(2)(B), the District Court could not reasonably ignore the deterrent effect of Dean's 30–year mandatory minimum.

*Id.* at 1176. Consequently, resentencing is appropriate in light of *Dean*.

## CONCLUSION

For the reasons stated above, we **AFFIRM** Person's conviction and the application of the "bodily injury" guideline but **REMAND** for resentencing in light of *Dean*.