RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0013p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MICHAEL B. CLARK,

*Defendant-Appellant*.

No. 20-5722

─────────────────

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 2:18-cr-00048-1—David L. Bunning, District Judge.

Argued:  October 20, 2021

Decided and Filed:  January 24, 2022

Before:  BATCHELDER, LARSEN, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Gregory A. Napolitano, LAUFMAN & NAPOLITANO, LLC, Cincinnati, Ohio, for Appellant.  Elaine K. Leonhard, UNITED STATES ATTORNEY'S OFFICE, Ft. Mitchell, Kentucky, for Appellee.  **ON BRIEF:**  Gregory A. Napolitano, LAUFMAN & NAPOLITANO, LLC, Cincinnati, Ohio, for Appellant.  Charles P. Wisdom, Jr., James T. Chapman, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

---

**OPINION**

---

ALICE M. BATCHELDER, Circuit Judge. Following his conviction for distribution of child pornography, Appellant Michael Clark appeals, arguing that there was insufficient evidence to support the jury's verdict and that the district court committed various evidentiary errors that require reversal. Because Clark's arguments lack merit, we AFFIRM the judgment of the district court.

**I.**

Michael Clark was convicted by a jury on five counts of knowingly distributing child pornography in violation of 18 U.S.C. § 2252(a)(2).

In 2017, Steven Kush, an undercover police detective in Campbell, Kentucky, used a computer program to search for individuals who were illegally trading and downloading child pornography on BitTorrent, a peer-to-peer file-sharing network. Kush's computer program was set up to scan for, and then download, potential illegal images and videos from sources located in Kentucky. The program was unique in that it performed "single-source download[s]," meaning that it "single[d] out a single peer on the network based on their IP address." By contrast, a download by a typical user on a file-sharing network would receive multiple pieces of a file from several different sources.

On several occasions in May and June 2017, Kush's computer program downloaded child pornography from a computer with an IP address located in Independence, Kentucky. Kush did not investigate these downloads. But after some time, he provided them to Steven Benner, a police officer in Kenton, Kentucky, assigned to investigate internet crimes against children. Benner used the information to obtain a warrant to search Clark's residence, the source of the downloaded child pornography.

At 6:00 a.m. on April 5, 2018, Benner and other officers executed the search warrant. Clark was home, along with his wife, daughter, and grandson. The officers seized multiple computers, including an Apple MacBook Pro laptop, an Acer Aspire laptop, and a Compaq Presario laptop. The officers interviewed Clark and recorded the interview. They told Clark that he was not under arrest, and they did not give him *Miranda* warnings. Clark told the officers that the MacBook laptop was his work computer. Later that day, the officers interviewed Clark's adult son, Josh Clark, along with Josh's roommate and family friend, Cody Thierauf, at their apartment.

The three computers seized in the search were sent to Tom Bell, a forensic examiner in the Cyber Crimes Branch of the Kentucky Attorney General's Office. Bell's examination of the MacBook computer found 295 images and 62 videos of child pornography, a user profile named "Mike," and evidence suggesting the former presence of additional illegal content and file-sharing programs. Similarly, Bell's examination of the Acer and Compaq computers found evidence of file-sharing programs, that both had user profiles named "Mike," and the former presence of search terms associated with child pornography. The Acer and Compaq computers, however, had been last logged into in 2007 and 2009, respectively.

Clark was convicted by a jury based on the evidence on the MacBook computer. The district court sentenced him to 192 months in prison, followed by twenty years of supervised release. Clark timely appeals.

**II.**

On appeal, Clark argues that we should reverse his conviction for three reasons, none of which is persuasive.

**A. Sufficiency of the Evidence**

Clark claims that his conviction for distributing child pornography, 18 U.S.C. § 2252(a)(2), must be reversed because the evidence produced at trial was insufficient to prove: (1) that the illegal images and videos traveled in interstate commerce; and (2) that Clark knowingly distributed the images and videos. The statute states, in pertinent part:

"Any person who . . . knowingly . . . distributes[] any visual depiction [that involves the use of a minor engaging in sexually explicit conduct] using any means or facility of interstate or foreign commerce . . . shall be punished as provided [herein]."

18 U.S.C. § 2252(a)(2).[1]

A conviction is supported by sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see United States v. Barnett*, 398 F.3d 516, 521–22 (6th Cir. 2005). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986). "This limited review bars courts from intrud[ing] on the jury's role to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Maya*, 966 F.3d 493, 499 (6th Cir. 2020) (cleaned up). We review the sufficiency of the evidence de novo. *United States v. Farrad*, 895 F.3d 859, 871 (6th Cir. 2018).

The government devotes a substantial portion of its brief to arguing that Clark's challenge is to the jury instructions, a challenge that he failed to preserve by not objecting to them in the district court. A careful review of Clark's briefing, however, shows that he does not challenge the jury instructions. Rather, Clark takes issue with the sufficiency of the evidence. Because these are separate issues, Clark's concessions regarding the jury instructions are

---

[1]18 U.S.C. § 2252(a)(2) reads, in full, as follows:

(a) Any person who— . . .

> (2) knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, if--

> (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

> (B) such visual depiction is of such conduct; . . . . shall be punished as provided in subsection (b) of this section.

immaterial to his present claim.  And to the extent that the government argues that Clark waived or forfeited his sufficiency claim, we find that he did not.**2**

### 1.  "Means or Facility of Interstate Commerce" Element

Clark challenges the interstate-commerce element of § 2252(a)(2).**3**  He claims that there is insufficient evidence of interstate travel because the illegal images and videos were transmitted purely intrastate between two computers located in Kentucky.  In Clark's view, the child pornography moved directly from his computer (located in Independence, Kentucky) to detective Kush's computer (located in a neighboring county) through the internet in what is called a "single-source download."  The government argues that there was sufficient evidence because an internet transmission necessarily involves the interstate travel of data and, in any event, § 2252(a)(2) only requires distribution through a "means" of interstate commerce.

Clark's argument implicates important but relatively simple questions about what the interstate-commerce element of § 2252(a)(2) requires.  Does it require evidence that the child pornography travelled across state lines?  Or does § 2252(a)(2) merely require that a defendant used a means or facility of interstate commerce (such as the internet) to distribute the child pornography?  We find that it requires the latter.**4**

---

**2**At the close of the government's case, Clark moved for judgment of acquittal under Rule 29.  He did not base the motion on specific grounds, and the district court understood the motion to argue, generally, that there was insufficient evidence to support a guilty verdict.  Clark later renewed his Rule 29 motion after introducing evidence on his own behalf.  Considering these general motions, we conclude that Clark did not waive or forfeit his sufficiency claim. *United States v. Chance*, 306 F.3d 356, 371 (6th Cir. 2002) (finding that a defendant preserved his sufficiency challenge because his Rule 29 motions "were general in nature" and were not construed [by the district court] as . . . based on specific grounds"); *cf. United States v. Hamm*, 952 F.3d 728, 740 (6th Cir. 2020) ("Although specificity of grounds is not required in a Rule 29 motion, where a Rule 29 motion is made on specific grounds, all grounds not specified are waived." (quotation omitted)).

**3**Clark also argues that, because there is insufficient evidence of the interstate-commerce element, this court is deprived of subject-matter jurisdiction.  He is incorrect.  The interstate-commerce element of an offense is jurisdictional only in the sense that it relates to the power of Congress to regulate the conduct.  Whether or not the government has proven the interstate-commerce element in a particular case does not affect the court's subject-matter jurisdiction. *United States v. Bacon*, 884 F.3d 605, 608 (6th Cir. 2018); *United States v. Riddle*, 249 F.3d 529, 536 (6th Cir. 2001).

**4**Although Clark's brief makes passing references to "an unconstitutional expansion of federal power" and "a glaring evidentiary hole with constitutional implications" he falls well short of presenting a developed constitutional challenge to § 2252(a)(2).  We, therefore, do not consider the constitutionality of § 2252(a)(2) under

We begin with the language of the statute. As noted, § 2252(a)(2), in relevant part, punishes "any person . . . who knowingly . . . distributes [child pornography] using any means or facility of interstate or foreign commerce." Our analysis turns on the phrase "using any means or facility of interstate or foreign commerce." A plain reading of that phrase shows that § 2252(a)(2) proscribes the distribution of child pornography provided that the distribution occurs *using a means* of interstate commerce. We do not read the statute to require actual transportation of child pornography across state lines. And we have held that the internet is a means of interstate commerce. *United States v. Pina*, 724 F. App'x 413, 422–23 (6th Cir. 2018); *United States v. Pers.*, 714 F. App'x 547, 551 (6th Cir. 2017); *see United States v. Daniels*, 653 F.3d 399, 408 (6th Cir. 2011).

In 2008, Congress amended the jurisdictional provisions of several child-pornography laws, including § 2252(a)(2), to add the phrase "using any means or facility of interstate or foreign commerce." Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110–358, § 103, 122 Stat. 4001 (2008) (amending §§ 2251, 2251A, 2252, and 2252A to include that phrase). Previously, § 2252(a)(2) required that the child pornography had been mailed, shipped, or transported in interstate or foreign commerce.[5] 18 U.S.C. § 2252(a)(2) (2006). We agree with other circuit courts that have interpreted this amendment as an "expan[sion]" of the statute's "jurisdictional coverage." *United States v. Lewis*, 554 F.3d 208, 216 (1st Cir. 2009); *see United States v. Crain*, 877 F.3d 637, 646 & n.32 (5th Cir. 2017) (recognizing that the "jurisdictional element" of 2252(a) was "expanded" by the 2008 amendment); *United States v. Wasson*,

---

Congress's Commerce Clause authority. *See Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014) (noting that an appellant abandons an argument by failing to "fully develop" it).

[5]The prior version of § 2252(a)(2) stated:

(a) Any person who— . . .

(2) knowingly receives, or distributes, any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce or through the mails, if —

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct; . . . . shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2252(a)(2) (2006).

847 F. App'x 523, 525–26 (10th Cir. 2021) (emphasizing that Congress "reduce[d] the government's burden on the interstate commerce element" when it amended a materially identical offense to include the words "using any means or facility of interstate or foreign commerce") (interpreting § 2252A).  That is to say, the interstate-commerce element of § 2252(a)(2) is satisfied when a defendant uses the internet to distribute child pornography, regardless of whether there is evidence that the data travelled interstate.

Clark's argument that his child pornography did not pass through interstate wires—though dubious considering the structure, complexity, and interconnectedness of the internet—is therefore inconsequential.  By its terms, § 2252(a)(2) can reach a purely intrastate distribution of child pornography so long as that distribution occurred by the use of a means or facility of interstate commerce.  Other circuit courts have reached the same conclusion when interpreting identical language in substantially similar statutes.[6]    *See, e.g.*, *United States v. Baum*,

---

[6] 18 U.S.C. § 2251(a), (d) states:

(a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed . . . .

(d) (1) Any person who, in a circumstance described in paragraph (2), knowingly makes, prints, or publishes, or causes to be made, printed, or published, any notice or advertisement seeking or offering—

(A) to receive, exchange, buy, produce, display, distribute, or reproduce, any visual depiction, if the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct; or . . .

(2) The circumstance referred to in paragraph (1) is that—

(A) such person knows or has reason to know that such notice or advertisement will be transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mailed; or

(B) such notice or advertisement is transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mailed.

542 F. App'x 724, 726–27 (10th Cir. 2013) (finding that, after § 2252A(a)(5)(B) was amended in 2008, the government was not required "to establish that the images themselves had crossed state lines"); *United States v. Brown*, 785 F.3d 1337, 1350–51 (9th Cir. 2015) (interpreting the 2008 amendments of §§ 2251(d)(1)(A) and 2252A(a)(1) to "not require evidence that the [child pornography] actually crossed state lines"); *United States v. DeFoggi*, 839 F.3d 701, 713 (8th Cir. 2016) ("[The defendant's] use of the internet to access and download [child pornography] from [a website] is enough in this case to satisfy the interstate commerce nexus [of § 2252A(a)(5)(B)]."); *see also United States v. Grzybowicz*, 747 F.3d 1296, 1306 (11th Cir. 2014) ("The interstate commerce element[s] for [§§ 2251(a) and 2252A(a)(5)(B)] [are] satisfied by proof that the child pornography was transmitted using a facility of interstate or foreign commerce, including by computer . . . ."). In this case, the government provided the jury with circumstantial evidence that Clark's child pornography moved from his computer through the internet to the government agent's computer. This is sufficient evidence of distribution using a means or facility of interstate commerce within the meaning of § 2252(a)(2).

There are, however, two issues worth noting. First, some circuit courts do not distinguish between the current and prior versions of the child-pornography laws. In interpreting the pre-amendment versions of §§ 2251, 2252, and 2252A, those courts found that transmitting child pornography over the internet was tantamount to moving the pornography across state lines[7]—

---

18 U.S.C. § 2252A(a)(5) states:

(a) Any person who . . .

(5) either —

(A) in the special maritime and territorial jurisdiction of the United States, or on any land or building owned by, leased to, or otherwise used by or under the control of the United States Government, or in the Indian country (as defined in section 1151), knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography; or

(B) knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . .

[7]*Lewis*, 554 F.3d at 215 ("[W]e conclude that the government proved the images traveled interstate when it introduced evidence that [the defendant] received images that were transmitted over the Internet.") (interpreting

which thereafter foreclosed arguments like Clark's in those circuits, even after the 2008 amendment.[8]  On occasion, we have suggested that we agree that an internet transmission implicates interstate travel.  *See United States v. Thomas*, 74 F.3d 701, 706–10 (6th Cir. 1996); *United States v. Mellies*, 329 F. App'x 592, 605–06 (6th Cir. 2009); *United States v. Napier*, 787 F.3d 333, 346–47 (6th Cir. 2015); *Pina*, 724 F. App'x at 422–23.  But because the current version of § 2252(a)(2) does not require interstate travel, we need not reach that issue in this case.

Second, evidence of internet use is not the only method by which the government can prove the interstate-commerce element of § 2252(a)(2).  Another way to satisfy the element is with evidence of actual interstate travel.  *See Napier*, 787 F.3d at 344–46 (explaining that the government can satisfy the interstate-commerce element of § 2252(a)(2) in various ways, including with "proof that 'the visual depiction or the production or transmission materials crossed a state line'").  But the government did not do that here, apart from proving that Clark used the internet.  It did not introduce evidence of the interstate origin of the computer used in the commission of the offense,[9] the origin of the visual depictions themselves, or the location of the internet servers involved.  If it had, we would likely have had no difficulty affirming Clark's conviction on this ground.  *See, e.g.*, *id.* at 345–47; *United States v. Schaefer*, 501 F.3d 1197, 1208 (10th Cir. 2007) (Tymkovich, J., concurring), *overruled in part by United States v. Sturm*, 672 F.3d 891 (10th Cir. 2012) ("Most Internet cases, for example, include testimony regarding

---

§ 2252(a)(2)); *United States v. Harris*, 548 F. App'x 679, 682 (2d Cir. 2013) (finding that "use of the Internet" supports a finding "that the child pornography had been 'transported in interstate . . . commerce" under § 2252(a)(2));*United States v. MacEwan*, 445 F.3d 237, 244 (3d Cir. 2006) ("[B]ecause of the very interstate nature of the Internet, once a user submits a connection request to a website server or an image is transmitted from the website server back to the user the data has traveled in interstate commerce.") (interpreting § 2252A(a)(2)(B)); *United States v. White*, 2 F. App'x. 295, 298 (4th Cir. 2001) (finding that the transmission of child pornography "by means of the Internet is tantamount to moving [it] across state lines" (quotation omitted)) (interpreting § 2252A(a)(5)(B)); *United States v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002) (same) (interpreting § 2251).

[8]*See, e.g.*, *United States v. Pires*, 642 F.3d 1, 9 (1st Cir. 2011); *United States v. Clarke*, 979 F.3d 82, 93 & n.6 (2d Cir. 2020); *United States v. Franz*, 772 F.3d 134, 154–55 (3d Cir. 2014); *United States v. Miltier*, 882 F.3d 81, 87–88 (4th Cir. 2018); *United States v. Bogomol*, 623 F. App'x 219, 220–21 (5th Cir. 2015).

[9]It appears that the government did, however, introduce Clark's MacBook Pro into evidence at trial. Although it is quite likely that the computer had a label on the back of it that denoted its country or state of origin, the government failed to argue this point to us or the district court.

the location of the servers accessed by defendant, or some other evidence that reveals the interstate character of the particular transmissions at issue.").

Nevertheless, for the reasons previously stated, sufficient evidence exists to support the interstate-commerce element of Clark's conviction under § 2252(a)(2).

## 2. "Knowing Distribution" Element

Next, Clark challenges the "knowing distribution" element of § 2252(a)(2). He argues that the evidence at trial was insufficient because sharing was the default setting on his peer-to-peer program and was not purposefully selected by him. This argument is without merit.

We have repeatedly held that even passive distribution of known child pornography constitutes distribution under § 2252 where the files are knowingly made available to others through file-sharing software. *See, e.g.*, *United States v. Moran*, 771 F. App'x 594, 598 (6th Cir. 2019); *United States v. Conner*, 521 F. App'x 493, 500 (6th Cir. 2013) ("We agree with the government that knowing use of LimeWire, much like the posting of a file on a website, is sufficient [to find knowing distribution]."). In so holding, we have agreed with the First Circuit that "[w]hen an individual consciously makes files available for others to take and those files are in fact taken, distribution has occurred" and "[t]he fact that the defendant did not actively elect to transmit those files is irrelevant." *Moran*, 771 F. App'x at 598 (quoting *United States v. Chiaradio*, 684 F.3d 265, 282 (1st Cir. 2012)).

We have also found support for this position in our application of USSG § 2G2.2(b)(3)(F), the sentencing enhancement for knowing distribution of child pornography. *Id.* In those cases, we have upheld use of the enhancement "when files are knowingly made available through file-sharing software" because the very "point of using a file-sharing program . . . 'is to share.'" *Id.* (quoting *United States v. Abbring*, 788 F.3d 565, 567–68 (6th Cir. 2015)); *see also Conner*, 521 F. App'x at 500 (noting that "courts have not required the government to prove" that a defendant knew his computer was "equipped to distribute"); *United States v. Dunning*, 857 F.3d 342, 350 (6th Cir. 2017) ("Dunning's knowing use of peer-to-peer software justifies the distribution enhancement.").

Clark does not dispute that he knowingly used peer-to-peer software or that the child pornography on his computer was in his shared folder. Absent "concrete evidence of [Clark's] ignorance" that his program was set up to share, these concessions alone satisfy the knowing-distribution element of § 2252(a)(2). *Dunning*, 857 F.3d at 350 (quoting *Abbring*, 788 F.3d at 568); *see Moran*, 771 F. App'x at 598–99; *United States v. Collard*, 849 F. App'x 523, 533 (6th Cir. 2021). The fact-finder could have reasonably inferred that Clark knew that placing child pornography in his shared folder meant that it could be accessed and downloaded by others, including law enforcement. *See Dunning*, 857 F.3d at 350. Additionally, the government presented evidence that a user may turn off the program's default sharing function and that Clark took no such steps. There was also evidence that Clark set up two "evidence destruction programs" on his MacBook computer to "run at [the computer's] start." Altogether, there is sufficient circumstantial evidence that Clark knowingly distributed illegal images and videos when he placed them in an accessible public folder on a peer-to-peer network.

Therefore, sufficient evidence supports the interstate-commerce element and the knowing-distribution element of Clark's conviction.

## B. Evidentiary Errors

Next, Clark argues that the district court committed various evidentiary errors that require reversal. Each will be addressed in turn. We find no errors or abuses of discretion.

### 1. Clark's Recorded Interrogation

Clark challenges the admission of his recorded interrogation with Officer Benner, which Clark alleges was obtained in violation of his Fifth Amendment rights because he was not given *Miranda* warnings. The government responds that Clark waived his *Miranda* argument because Clark conceded during the trial that he was not under arrest and that the police did not have to give him *Miranda* warnings. In the alternative, the government argues, first, that we should decline to review Clark's claim because it turns on unresolved questions of fact and, second, that the interrogation was not custodial. We find that Clark waived his *Miranda* claim.

"[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotation marks omitted). It is different from mere forfeiture, which "is the failure to make the timely assertion of a right." *Id.* We have found that a defendant waives an argument by, for example, raising and then abandoning it, *United States v. Denkins*, 367 F.3d 537, 543 (6th Cir. 2004), stating in a brief that a proposition is not disputed, *United States v. Walker*, 615 F.3d 728, 733 (6th Cir. 2010), or conceding it in open court and then changing positions on appeal, *United States v. Abdi*, 827 F. App'x 499, 506 (6th Cir. 2020). On the other hand, we have found that a defendant forfeits an argument by, for example, failing to make it before the district court, *United States v. Montgomery*, 998 F.3d 693, 698 (6th Cir. 2021), only summarily raising it without a developed argument, *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 521–22 (6th Cir. 2014), or acknowledging it without "press[ing] it," *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 677 (6th Cir. 2018).

Clark never asserted his *Miranda* claim before the district court. He did not bring a pretrial motion to suppress his recorded statements, as required by Federal Rule of Criminal Procedure12(b); and he did not object to the admission of his statements during trial, or when the district court *sua sponte* told the jury that "[a]s a matter of law, *Miranda* warnings were not necessary in this case." Most importantly, Clark told the jury, "[w]e all know that [Clark] at the time of the interrogation[] [was] not under arrest" and therefore the police "didn't have to give [him] the *Miranda* warnings."

Clark, therefore, conceded his *Miranda* claim in a manner that we have found evinces an intentional relinquishment of a known right. *See United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015) ("[W]e do not treat the failure to file a [Rule 12(b)] motion as a waiver unless the circumstances of the case indicate that the defendant intentionally relinquished a known right."). Clark's conduct was not merely passive. He made a "a plain, explicit concession on the record addressing the precise issue later raised on appeal," and therefore affirmatively waived his claim going forward. *United States v. Mabee*, 765 F.3d 666, 673 (6th Cir. 2014); *Abdi*, 827 F. App'x at 506.

But even if Clark did not waive his *Miranda* claim, he certainly forfeited it.  In such a case, we review the admission for plain error.  *United States v. Ramamoorthy*, 949 F.3d 955, 962 (6th Cir. 2020).  A plain-error review of a forfeited suppression claim is "permissive, not mandatory."  *Id.* (quoting *Olano*, 507 U.S. at 735).  We have declined to review such claims when they "turn[] on unresolved questions of fact."  *Id.*  This is because "[s]uppression claims typically present fact-oriented issue[s]" that appellate courts "are not equipped to decide . . . in the first instance."  *Id.* at 962–63 (cleaned up).  Clark's claim, like most suppression claims, implicates these concerns.  He asks us to decide whether he was subject to custodial interrogation when he was questioned by Officer Benner.  Resolving that question depends on the "totality of the circumstances" and whether a reasonable person in Clark's position would have felt free to leave—inquiries that necessitate the "balancing [of] a series of factors, no one of which is determinative, and all of which are highly dependent upon what transpired . . . that day."  *Ramamoorthy*, 949 F.3d at 963; *see United States v. Brooks*, 379 F. App'x 465, 473 (6th Cir. 2010).  The district court is better suited to develop these fact-intensive questions.  *See United States v. Simer*, 835 F. App'x 60, 68 (6th Cir. 2020) (declining review because appellate courts are "ill-equipped to re-create the fact-intensive and focused nature of a suppression hearing").  And because these questions were not raised earlier, the district court made no factual findings relevant to them and neither party had the "incentive to develop the factual record" on them.  *Ramamoorthy*, 949 F.3d at 963 (quotation omitted); *see United States v. Finch*, 998 F.2d 349, 355 (6th Cir. 1993) (declining review because "[a]lthough the facts appear to have been well developed, it is possible that the failure of the defense to raise the issue may have influenced the manner in which the evidence was developed").  Therefore, even if Clark's *Miranda* claim was not waived, it turns on unresolved questions of fact, and we decline to review it.

### 2.  Old Computers

Clark argues that the district court erroneously allowed the government to present evidence of two old computers found in his home, claiming that such evidence was inadmissible under Rules 404(b) and 403 of the Federal Rules of Evidence.

During the search of Clark's home, law enforcement seized an Acer and a Compaq computer, among other devices. When those two computers were forensically examined, Tom Bell found evidence of peer-to-peer software and deleted data that suggested the former presence of child pornography and related searches. Bell testified that "[t]hese hits were also found in a folder named 'Mike.'" Clark moved to exclude this evidence, but the district court denied the motion, finding the evidence admissible under Rule 404(b) to prove identity and absence of mistake or accident, and finding no unfair prejudice under Rule 403.

*Rule 404(b).* Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But such evidence can be admitted for "another purpose," such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). We review de novo the district court's legal determination that the evidence was admissible for a proper 404(b) purpose.[10] *See United States v. Rayborn*, 495 F.3d 328, 342 (6th Cir. 2007).

The evidence concerning the Acer and Compaq computers is probative of a material issue other than character. It tended to show that Clark—whose given name, after all, is Michael—was the individual responsible for distributing child pornography (*i.e.*, identity and absence of mistake) and to disprove his defenses that (1) someone else was the perpetrator, and (2) he was a technological novice. As the district court noted, these are permissible purposes under Rule 404(b). We have "overwhelmingly approved of the admission of 'other acts' evidence" when identity is a material issue. *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006); *see, e.g.*, *United States v. Keith*, 502 F. App'x 453, 455 (6th Cir. 2012) (affirming the admission of prior convictions to "show that [defendant] was the individual responsible for the child pornography found on the computer"). The evidence was properly admitted under 404(b).

---

[10]Our circuit appears to be split as to whether we review a district court's 404(b) determination de novo or for an abuse of discretion. *United States v. Carter*, 779 F.3d 623, 625 (6th Cir. 2015). We decline to resolve that disagreement in this case, however, because Clark's 404(b) argument fails under either standard of review.

*Rule 403*. Rule 403 provides a balancing test for excluding relevant evidence, but only if the evidence's "probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403; *see also United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018) ("The test is strongly weighted toward admission."). We review such rulings for abuse of discretion. *United States v. Hazelwood*, 979 F.3d 398, 408 (6th Cir. 2020).

As explained, the evidence was highly probative of material issues. And with this in mind, the evidence did not present an overwhelming danger of unfair prejudice. The district court gave a clear limiting instruction to the jury that it could use the evidence for only limited, permissible purposes. The court repeated this instruction while giving the jury charge. Given these instructions and the importance of the computer evidence, any remaining prejudice was limited and did not invite the jury to decide the case on an improper basis. *United States v. Lang*, 717 F. App'x 523, 539 (6th Cir. 2017) ("[Rule 403] only contemplates 'evidence which tends to suggest a decision on an improper basis' or which 'hit[s] . . . below[] the belt.'" (quotation omitted)); *United States v. Lattner*, 385 F.3d 947, 958 (6th Cir. 2004); *Keith*, 502 F. App'x at 455. Because the district court properly weighed the evidence's probative value against its limited prejudicial effect, it did not abuse its discretion under Rule 403.

*The Government's Closing Argument*. Clark also contends that the government improperly told the jury during closing arguments that it may use the computer evidence to prove that Clark's distribution was "knowing." Although Clark did not object to these statements in the district court, he now argues that they violated the district court's limiting instruction. But, again, the government used the computer evidence for a permissible Rule 404(b) purpose: to prove that Clark knowingly, and not mistakenly, distributed child pornography. Regardless, "isolated inappropriate remarks by the prosecutor, in an otherwise fair trial, do not generally justify reversal of a criminal conviction." *United States v. Cleveland*, 907 F.3d 423, 439 (6th Cir. 2018) (quoting *United States v. Chalkias*, 971 F.2d 1206, 1213 (6th Cir. 1992)). We find no error.

### 3. Fabricated Invoices

Clark argues that the district court erroneously admitted fabricated invoices, which were submitted by him in a prior court filing, as evidence of his consciousness of guilt.  Clark argues that the invoices were not sufficiently connected to him and, therefore, not probative of his state of mind.

Prior to trial, Clark filed a motion in limine seeking to exclude evidence from the Acer and Compaq computers that showed that child pornography existed on them as early as 2005. Clark attached to the motion an affidavit from Margaret Allen (his mother-in-law) and two invoices from a computer store.  The attachments purported to show that Allen's late husband purchased the computers in 2009 and 2012, respectively, and that Clark did not receive them until 2014.  The district court denied the motion, however, after the government provided evidence that the invoices were fabricated.  At trial, the district court allowed the government to admit the invoices and present testimony concerning their fabrication.  The district court instructed the jury that if they believed that the invoices were fabricated, such evidence could be used to establish Clark's consciousness of guilt.  We review de novo the district court's legal determination that the evidence was admissible for a proper Rule 404(b) purpose, and we review for abuse of discretion the district court's Rule 403 determination.  *Rayborn*, 495 F.3d at 342.

*Rule 404(b)*.  Typically, evidence of a defendant's consciousness of guilt is admitted under Rule 404(b) when he flees the scene, attempts to bribe or threatens adverse witnesses, tampers with evidence, or expresses his suicidal ideations.  *United States v. Cody*, 498 F.3d 582, 591 (6th Cir. 2007); *United States v. Copeland*, 321 F.3d 582, 598 (6th Cir. 2003); *United States v. Munnerlyn*, 202 F. App'x 91, 95 (6th Cir. 2006).  Fabricating evidence is a form of tampering with evidence and the converse to spoliation of evidence.  And as such, evidence of it is admissible to prove a defendant's consciousness of guilt.[11]  *United States v. Snyder*, 789 F. App'x 501, 510–12 (6th Cir. 2019) (admitting evidence of defendant's post-indictment loan agreement to show potential fabrication of evidence and, thus, defendant's consciousness of

---

[11]Clark asks the court to employ a four-part test to determine the admissibility of the evidence.  But that test "has been limited to cases involving *actual flight*" and is therefore inapplicable to cases like this one involving fabrication of evidence.  *United States v. Hickman*, 766 F. App'x 240, 253 (6th Cir. 2019).

guilt); *see Copeland*, 321 F.3d at 598 ("This court has held that evidence that has the tendency to demonstrate a defendant's consciousness of wrongdoing is admissible to establish the defendant's guilt.").

Clark's fabricated invoices were admissible under Rule 404(b) to show his consciousness of guilt. Clark, through his attorney, filed the invoices as part of his motion in limine. *See Vermont v. Brillon*, 556 U.S. 81, 90 (2009) ("[T]he attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation . . . ." (quotation omitted)). As presented, the invoices were exculpatory and supported Clark's defense. Clark knew the true timing of his acquiring the computers, but he allowed the fabricated invoices to be used for his benefit. This sufficiently "indicates [Clark's] consciousness that his case is a weak or unfounded one." *See United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986) (quotation marks omitted). The district court did not err in finding that these invoices were attributable to Clark and admitting them to prove Clark's consciousness of guilt.

*Rule 403*. Nor did the district court abuse its discretion under Rule 403. Rule 403 excludes relevant evidence when its probative value is substantially outweighed by its prejudicial effect. Fed. R. Evid. 403. Clark's reliance on illegitimate tactics is highly probative because it tended to establish his state of mind and disprove his defense that a third party was responsible for distributing child pornography. *See United States v. Cordero*, 973 F.3d 603, 620 (6th Cir. 2020) ("[C]ourts have observed that evidence tending to show consciousness of guilt frequently bears upon a defendant's intent and knowledge."). The invoices were not overly inflammatory and presented little danger of unfair prejudice in comparison to their "legitimate probative force." *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988). Any prejudice resulting from the invoices was limited by the court's jury instruction, which clearly stated that the invoices "may not be used for any other purpose," and which was drafted in a way that allowed "the jury [] to reach its own conclusion about the strength of the government's fabrication theory." *Snyder*, 789 F. App'x at 513; *see also Cordero*, 973 F.3d at 621 ("The trial court's delivery of consistent, frequent, and accurate limiting instructions weighs against a finding of unfair prejudice."). Therefore, the district court properly weighed the evidence's probative value against its limited prejudicial effect and did not abuse its discretion.

**4. Clark's Computer Knowledge**

Clark argues that the district court erroneously admitted evidence and permitted testimony concerning his computer knowledge. During trial, the government called Cody Thierauf to testify that Clark had a sophisticated knowledge of computers. Thierauf was a longtime friend of Clark's son and had spent a lot of time at Clark's home during the years. Thierauf testified that he was familiar with Clark's computer knowledge and that, on one occasion in 2017, he and Clark had a Facebook conversation in which Clark asked him how to hack into a website and how to "edit an SQL file." Over Clark's objection, the district court admitted screenshots of this Facebook conversation. We review de novo the district court's legal determination that the evidence was admissible for a proper Rule 404(b) purpose, and we review for abuse of discretion the district court's Rule 403 determination. *Rayborn*, 495 F.3d at 342.

*Rule 404(b)*. Clark argues that Thierauf's testimony and the Facebook exhibit were improper Rule 404(b) evidence. This argument fails. The Facebook exhibit was admissible as an admission of a party-opponent under Rule 801(d)(2) and not as Rule 404(b) evidence. Fed. R. Evid. 801(d)(2), 404(b). Stated differently, the exhibit was not used as extrinsic evidence to prove that Clark hacked a company's website, but as an "incriminating admission" relevant to Clark's advanced computer skills. *United States v. Bradshaw*, 280 F. App'x 477, 480 (6th Cir. 2008). In the same way, Thierauf's testimony was used for the relevant purpose of establishing Clark's level of computer expertise, not as Rule 404(b) evidence. *See* Fed. R. Evid. 402. Clark's level of computer expertise was relevant because it would make it more, or less, probable that he possessed the technical ability to navigate peer-to-peer software. Moreover, Clark called his computer skills into question when he made statements to law enforcement—that were later played to the jury—suggesting that he was a technological novice. Therefore, we find no error under Rule 404(b).

*Rule 403*. Clark also argues that the district court abused its discretion under Rule 403. But in his opening brief, Clark does not specify how evidence of his computer knowledge would cause unfair prejudice. Instead, he attacks the probative value of the evidence. He argues that such evidence is "not relevant to the crimes at issue," and later argues that it has minimal probative value because "peer-to-peer programs do not require particularized or sophisticated

knowledge to operate." The record does not support these arguments. The distribution of child pornography via peer-to-peer file-sharing networks requires a high degree of technical ability. And for the reasons stated above, Thierauf's testimony and screenshots of his Facebook conversation with Clark were highly probative of a crucial issue: Clark's computer knowledge. The probative value of this evidence was not substantially outweighed by its limited prejudicial effect. We find no abuse of discretion.

### 5. The Limited Cross-Examination of Cody Thierauf

Clark claims that the district court violated his Sixth Amendment right by limiting his cross examination of Cody Thierauf. At trial, Clark sought permission to cross-examine Thierauf concerning Thierauf's production and distribution of pornography depicting Thierauf and his adult girlfriend. The district court did not permit this line of cross-examination, finding it "inappropriate under [Rule 403]." We review the district court's decision for abuse of discretion. *United States v. Callahan*, 801 F.3d 606, 623 (6th Cir. 2015).

The Sixth Amendment protects a criminal defendant's right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause guarantees defendants an opportunity to cross-examine adverse witnesses about potential sources of bias, prejudice, or motives to lie. *Davis v. Alaska*, 415 U.S. 308, 315–18 (1974). Nevertheless, district courts retain "wide latitude" to impose "reasonable limits" on the scope of cross examination due to concerns about "harassment, prejudice, confusion of the issues, the witness['s] safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). But, of course, any such restriction "may not be arbitrary or disproportionate to the purposes they are designed to serve." *Michigan v. Lucas*, 500 U.S. 145, 151 (1991) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Because Thierauf's consensual sexual behavior with his adult girlfriend was not relevant, the district court properly limited Clark's proposed line of questioning. *Van Arsdall*, 475 U.S. at 679; *see, e.g.*, *Farley v. Lafler*, 193 F. App'x 543, 547 (6th Cir. 2006) (prohibiting a proposed line of cross-examination that had "virtually no probative value"); *United States v. Richards*, 659 F.3d 527, 549 (6th Cir. 2011) (limiting the cross-examination of a witness' prior sexual

encounter with minors because they were "of peripheral relevance," even in a child pornography case).

Clark claims that his cross-examination would have "impeach[ed] [Thierauf's] credibility" and revealed his improper motive for testifying against Clark. But because Clark fails to specify how Thierauf's perhaps embarrassing but nonetheless legal behavior relates to his credibility or motive to lie, this argument lacks merit. *See Callahan*, 801 F.3d at 623 ("[The Confrontation Clause] does not mean that the defendant is free to impeach a witness 'in whatever way, or to whatever extent the defense might wish.'" (quotations omitted)). Importantly, the district court did not limit the cross examination of Thierauf entirely. Clark's attorney was able to question Thierauf about his "knowledge of peer-to-peer networking" and his "interest in or . . . involve[ment] with . . . child pornography," among other relevant information. Therefore, the district court's decision was not arbitrary, and it certainly was not disproportionate. *See Michigan*, 500 U.S. at 151. The district court did not abuse its discretion in limiting Theirauf's cross-examination.

## C. Fundamentally Fair Trial

Finally, Clark claims that the cumulative effect of the trial errors rendered his trial fundamentally unfair. But because there were no trial errors, Clark's claim of cumulative error "fails for want of error." *United States v. Ledbetter*, 929 F.3d 338, 365 (6th Cir. 2019).

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.