NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0264n.06

Case No. 24-2062

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 15, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| RICARDO DELGADO, II, | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |

Before: MOORE, WHITE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Ricardo Delgado participated in a sprawling drug-trafficking conspiracy. As a result, a jury convicted him of conspiring to distribute cocaine, possessing cocaine and fentanyl with the intent to distribute those drugs, and possessing multiple machine guns, pistols, and rifles in furtherance of those drug crimes. The district court ultimately sentenced Delgado to 60 years in prison. Delgado now appeals his conviction and sentence. We affirm both.

I.

In 2021, Ricardo Delgado wrapped up his latest prison stint for trafficking cocaine and began a term of federal supervised release in Saginaw, Michigan. During his first check-in, his probation officer asked him whether he'd "learn[ed] [his] lesson" from his previous conviction. R. 777, Pg. ID 5555. With unusual honesty, Delgado replied that he "d[id]n't know that it [was] going to be different this time." *Id.*

Delgado described drug dealing as his "chosen profession," analogizing it to other high-risk careers like firefighting. *Id.* at 5555–56. So far, he'd had a distinguished career—he was a "multi-kilo dealer," not some "street-level" type. *Id.* at 5555. As he explained, he "looked at things from the risk/reward perspective," taking deals only when the "reward outweigh[ed] the risk." *Id.* That outlook led him to a frank conclusion: "[I]f the right deal comes along, yeah, maybe [he would] get back in the game." *Id.* And if he got caught again? "Well, that's the job hazard of being a drug dealer." *Id.* at 5556.

Within a few months, Delgado was back at it. Federal agents discovered that a known drug dealer was routinely calling Delgado to coordinate drug purchases. As a result, agents sought and received a wiretap for Delgado's phone—ultimately recording over 1,000 of his conversations. On those calls, Delgado discussed the drug-dealing operation in detail with his co-conspirators. He talked with other suppliers about the quality of the drugs he was selling, advised dealers on pricing to maximize their profits, and set up associates with drugs and equipment to start dealing.

Three of Delgado's calls focused on a different business problem: arranging a shooting. A dealer told Delgado that he had been robbed at gunpoint while selling a kilo of cocaine. Delgado warned the dealer that he wasn't "trying to take [any] losses" on his sales. *Id.* at 5612–13. He urged the dealer to "go shoot the [robber's] house up." *Id.* at 5612. The dealer dutifully drove to Delgado's house, where Delgado gave him a fully automatic rifle, 30-round magazines, and armor-piercing bullets. The pair then started driving in separate cars toward the house where the robbery had occurred. On the way, Delgado directed the dealer to make sure the gun was loaded and encouraged him to empty both magazines at the house.

When the agents heard these calls, they moved into position to prevent the shooting. Officers stopped Delgado at the house but ultimately released him, hoping that he would continue

using his wiretapped cell phone to coordinate with his co-conspirators. Instead, Delgado promptly told a co-conspirator that he suspected the phone was bugged. Agents then arrested Delgado and several of his co-conspirators.

Afterwards, agents searched Delgado's house. In total, they discovered approximately 14 kilos of cocaine, two kilos of fentanyl, two money counters, and over $200,000 in cash. They recovered 14 firearms, including two fully automatic rifles. And they found silencers, an extended magazine, and ammunition. After searching Delgado's co-conspirators' houses, agents found more drugs and cash.

A federal grand jury indicted Delgado alongside 14 of his co-conspirators. Only Delgado chose to go to trial. All but one of his co-conspirators instead pled guilty, and several provided evidence to incriminate Delgado. In the lead-up to trial, Delgado repeatedly requested continuances, even after the court tried to set a "[f]irm" trial date in fall 2023. R. 356, Pg. ID 1182 (emphasis omitted). The continuances and adjournments slowly pushed Delgado's trial from March 2023 to June 2024.

Meanwhile, the government and Delgado engaged in plea negotiations. During those discussions, the government informed Delgado that some of the guns recovered from his house could be classified as machine guns. The government also said that it reviewed the drugs discovered at Delgado's house in preparation for trial and now believed some of the drugs hadn't been counted in Delgado's original indictment. So the government offered Delgado a final deal: If he pled guilty, the government wouldn't recharge him for the machine guns and additional fentanyl. Delgado rejected the government's offer.

As promised, around a month before the scheduled trial date, the government obtained a third superseding indictment against Delgado. That indictment added new counts for possessing

fentanyl with intent to distribute, possessing a machine gun in furtherance of a drug crime, possessing a machine gun, being a felon in possession of a firearm, and unlawfully possessing an unregistered silencer. Delgado responded by requesting a 60-day continuance and moved to dismiss the indictment for prosecutorial vindictiveness. The district court denied both motions.

The same day the third superseding indictment was filed, Delgado moved to exclude the recorded phone call to his dealer about shooting up the house of the buyer who robbed him. Shortly thereafter, the government moved to admit Delgado's statements to his probation officer about being a career drug dealer. The district court viewed both categories of evidence as "relevant and probative" of Delgado's motive and participation in the conspiracy. R. 657, Pg. ID 3780. So it denied Delgado's motion and granted the government's.

The case then proceeded to trial, and a jury convicted Delgado of all counts in the third superseding indictment. The district court ultimately sentenced Delgado to 60 years' imprisonment. Delgado timely appealed his conviction and sentence.

## II.

On appeal, Delgado argues that the district court erred in denying his motion to continue the trial. He also claims that the district court should have excluded the statements he made to his probation officer and the recorded phone calls where he arranged a shooting. And he contends that his sentence is procedurally unreasonable. Each challenge fails.

## A.

Delgado first argues that the district court improperly denied his motion for a 60-day continuance. In the alternative, he suggests that the district court should have granted his motion to dismiss the third superseding indictment if it denied him a continuance.

We review a district court's decision to deny a continuance for abuse of discretion. *United States v. Amawi*, 695 F.3d 457, 480 (6th Cir. 2012). In doing so, we afford district courts "a great deal of latitude." *Morris v. Slappy*, 461 U.S. 1, 11 (1983). After all, it's hard to assemble witnesses, lawyers, and jurors in the same place at the same time. *Id.* The difficulty of coordinating so many moving parts thus "counsels against continuances except for compelling reasons." *Id.* So we don't second-guess a district court's scheduling choices unless it unreasonably "insist[ed] upon expeditiousness in the face of a justifiable request for delay." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). And even if a defendant shows his request was justified, he must demonstrate that denial actually prejudiced his defense. *United States v. Warshak*, 631 F.3d 266, 298 (6th Cir. 2010). Delgado can't meet his burden here.

When it denied Delgado's request, the district court had already granted several continuances and delayed the trial by more than a year. Even after the district court set "[f]irm" trial dates, it let Delgado postpone his trial further. *See*, *e.g.*, R. 356, Pg. ID 1182 (emphasis omitted); R. 443, Pg. ID 1702 (emphasis omitted). Delgado can't show that the denial of his sixth continuance prejudiced him. *See Warshak*, 631 F.3d at 298. To establish prejudice, Delgado must show that additional time would've "made relevant witnesses available" or "added something to the defense." *United States v. Frost*, 914 F.2d 756, 765 (6th Cir. 1990) (quotation omitted). The mere fact that more time could have allowed the defense to request, produce, or argue something else isn't enough. *Amawi*, 695 F.3d at 481. Rather, Delgado must show that he lacked time to prepare for *specific* legal issues, witnesses, or motions. *See United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997). He hasn't done so here.

Instead, Delgado speculates only that more time to research the four new counts would've made a difference to his defense. But he had ample time to review the evidence. The government

seized the fentanyl, guns, and attachments charged in the new counts during the same search underlying the first two indictments. Over the next two years, Delgado litigated a variety of motions about that search and the evidence recovered from it. So he was already familiar with the evidence in the new counts, as well as how the government discovered it and planned to use it at trial.

And Delgado had sufficient time to file any pretrial motions. The government provided him with a courtesy copy of the third superseding indictment two weeks before filing it. That timeline gave Delgado an opportunity to prepare any pretrial motions he intended to file to contest the new charges. Sure enough, on the same day the government filed the third superseding indictment, Delgado filed six new motions to compel discovery, suppress evidence, and exclude evidence. The district court resolved those motions before trial, and Delgado didn't file any other relevant motions. Even on appeal, he doesn't specify any motions he would've filed if given an extension, simply referring to "potential" other motions. Appellant's Br. at 29. Since he had time to review all the relevant evidence and make all the motions he intended to file, Delgado hasn't shown that the denial of the continuance prejudiced his defense.

On appeal, Delgado asserts several arguments that he didn't raise in his motion for a continuance. None of Delgado's new arguments succeeds.

*First*, Delgado argues that he needed more time to prepare for trial because the new counts increased his "sentencing exposure." *Id.* at 26; *see also* R. 659, Pg. ID 3786. True, one of the new counts carried a mandatory minimum sentence of 30 years' imprisonment, which could run consecutively with the other counts for a total mandatory minimum of 55 years' imprisonment. But Delgado already faced a mandatory minimum sentence of 30 years and up to life imprisonment on the old counts. Given that Delgado already faced a lengthy mandatory minimum, he doesn't

explain how the higher potential sentence would've changed his trial strategy. Instead, he suggests that the new counts might have spurred him "to put on a case to rebut the government's." Appellant's Br. at 27. But surely a 30-year mandatory minimum sentence motivated him to do so already. The vague claim that Delgado might have tried harder to mount a defense after the government added new charges doesn't show prejudice.

*Second*, Delgado argues that he needed additional time to call experts or hire investigators to examine the fentanyl, machine gun, and silencer identified in the new counts. Yet Delgado had already received those items in discovery years before the trial, meaning he was always on notice that they could become relevant. *See Warshak*, 631 F.3d at 299. To excuse his delay, Delgado explains that he had previously focused his resources on the items directly relevant to the preexisting charges. But he hasn't demonstrated that extra time would've allowed him to find exculpatory evidence or call experts helpful to his case. *Id.* Indeed, at trial, Delgado didn't even contest the government's lab reports about the firearms or the fentanyl's quantity and purity. He also was able to effectively cross-examine the lab technician about the limitations of the testing performed on the fentanyl. And he stipulated that he wasn't licensed to own a machine gun or silencer. So Delgado can't show that additional time to examine the fentanyl, machine gun, and silencer would've mattered to his defense.

*Third*, Delgado claims that he lacked time to "speak with" the federal agent who examined the machine gun. Appellant's Br. at 31. But the government informed Delgado that the agent would testify and provided him with a copy of the agent's report the day after jury selection. The agent didn't testify until five days later, meaning Delgado had adequate time to review his report and prepare for his testimony. And when the agent took the stand, Delgado didn't inform the district court that he lacked time to prepare for any part of the agent's testimony. Even on appeal,

Delgado doesn't identify anything he would've done differently with an extra 60 days to prepare for the agent's testimony. Once again, that means he can't show prejudice.

Finally, in the alternative, Delgado argues that if the district court denied his request for more time, it was required to grant his motion to dismiss the third superseding indictment. But that motion wasn't connected to Delgado's request for a continuance to prepare witnesses and evidence for trial. Instead, the motion alleged that the district court should dismiss the indictment because the prosecution added the new counts to punish Delgado for exercising his constitutional right to a jury trial. *See United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001). The district court properly found that precedent squarely foreclosed this theory. As the Supreme Court has explained, "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). So once Delgado rejected the deal, the government's decision to add new counts didn't undermine the validity of the third superseding indictment. Because Delgado's motion to dismiss rested on an incorrect legal theory, the district court wasn't obligated to consider dismissal as an alternative to granting a continuance.

In sum, the district court didn't abuse its discretion by rejecting Delgado's motion for a sixth continuance or err by refusing to dismiss his indictment.

B.

Next, Delgado argues that the district court improperly admitted his statements to his probation officer and phone calls about the attempted shooting. We review the district court's evidentiary rulings for abuse of discretion. *United States v. Chavez*, 951 F.3d 349, 357–58 (6th Cir. 2020). Under this standard, we leave the district court's decision to admit evidence "undisturbed unless we are left with the definite and firm conviction that the district court

committed a clear error of judgment." *United States v. Page*, 163 F.4th 385, 397 (6th Cir. 2025) (quotation omitted).

1.

While talking with his probation officer in August 2021, Delgado stated that he was a "career" drug dealer. R. 777, Pg. ID 5555–56. For the "right deal," he would "get back in the game." *Id.* at 5555. Prison was unlikely to deter him—after all, that just was a "job hazard" for a "multi-kilo" player like him. *Id.* at 5555–56. Shortly after those statements, he began the drug conspiracy at issue here. Delgado argues these statements weren't admissible, but he's wrong.

For starters, these statements are admissible because they're relevant evidence. Fed. R. Evid. 402. Evidence is relevant if it has "*any* tendency" to make a material fact more probable. Fed. R. Evid. 401 (emphasis added). This standard is "extremely liberal," favoring admission if evidence has the "slightest probative worth." *United States v. Whittington*, 455 F.3d 736, 738–39 (6th Cir. 2006) (citation modified). Here, Delgado's frank confession that the "reward" from drug dealing "outweighs the risk" showed that he had a financial interest in dealing drugs and was willing to do so again. R. 777, Pg. ID 5555–56. In other words, his statements show his motive to commit the charged offense—a highly probative consideration.

Delgado argues that Federal Rule of Evidence 404(b) bars these statements as evidence of prior bad acts. But many of his remarks to the probation officer weren't about other prior acts. Instead, they were about Delgado's future intent to commit the acts at issue. So those comments don't fall within Rule 404(b)'s prohibition on evidence of "other crime[s], wrong[s], or act[s]." *See United States v. Saine*, 162 F.4th 804, 809 (6th Cir. 2025). Even if some of Delgado's statements did qualify as evidence of other crimes, wrongs, or acts, Rule 404(b) expressly permits the introduction of such evidence to prove a defendant's motive, intent, or plan. Fed. R. Evid.

404(b)(2). And that's exactly how the government used Delgado's statements here: Delgado was motivated to "get[] back in the game" because he was a "multi-kilo" dealer by trade. R. 777, Pg. ID 5555–56. So admitting these statements didn't violate Rule 404(b).

Delgado also contends that these statements are unfairly prejudicial. Fed. R. Evid. 403. But district courts may only "exclude relevant evidence if its probative value is *substantially* outweighed by a danger of . . . unfair prejudice." *Id.* (emphasis added). Evidence may be unfairly prejudicial if it has an "undue tendency to suggest decision on an improper basis," often "an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quotation omitted). But the district court has "very broad discretion" to balance the probative value and prejudicial effect of evidence. *United States v. Poulsen*, 655 F.3d 492, 509 (6th Cir. 2011) (quotation omitted). So on appeal, we maximize the evidence's probative value and minimize its prejudicial effect. *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993).

As the district court recognized, the balance tilts decisively toward admission here because the evidence is "incredibly probative" and not "unfairly prejudicial." R. 689, Pg. ID 4167. Far from being emotional or inflammatory, Delgado's statements to his probation officer speak directly to his financial motive and ongoing intent to traffic drugs. As we've explained, a defendant's statements demonstrating continued willingness or purpose to engage in drug trafficking carry substantial probative value. *See United States v. Barnes*, 822 F.3d 914, 923–24 (6th Cir. 2016). That's especially true when the statements were made near in time to the conduct at issue—just like Delgado's August statements were to his drug trafficking that fall. *See United States v. Asher*, 910 F.3d 854, 861 (6th Cir. 2018) ("[R]elative temporal proximity increases [the evidence's] probative value."). Because the danger of unfair prejudice didn't substantially

outweigh the probative value of Delgado's statements, the district court correctly admitted his comments to his probation officer.

On appeal, Delgado argues that the statements should have been excluded for several other reasons. None persuades us.

*First*, Delgado claims that the statements were unreliable because he was boasting about his past drug offenses or minimizing his sincere concerns about facing future jail time. But the factual question of whether Delgado was lying, exaggerating, or telling the truth speaks to the weight of his statements, not their admissibility. *See United States v. Perry*, 438 F.3d 642, 649 (6th Cir. 2006). At the end of the day, Delgado's credibility was a classic jury question. *See United States v. Hinojosa*, 67 F.4th 334, 341 (6th Cir. 2023). And Delgado had his chance to present his side of the statements to the jury.

*Second*, Delgado argues that the comments were cumulative because he had already stipulated to committing prior drug offenses and witnesses had testified to Delgado's role in the conspiracy. But the government didn't introduce the statements to prove that he was a drug dealer in the past. It introduced them to establish Delgado's intent and financial motive to continue selling drugs. And far from duplicating other evidence in the record, Delgado's statements to his probation officer offer relevant insight into his mental state. In short, those statements weren't cumulative.

*Third*, Delgado argues that Rule 404(a)'s ban on propensity evidence bars the statements. Evidence of a defendant's character trait isn't admissible to prove that he acted in accordance with that trait on a particular occasion. Fed. R. Evid. 404(a)(1). But the government didn't introduce Delgado's statements to prove his character or encourage the jury to infer similar actions. Instead, it introduced those statements to reveal Delgado's financial motive to commit the charged

offenses—in his own words, that "the reward" of drug trafficking "outweigh[ed] the risk." R. 777, Pg. ID 5555. So Delgado's statements invited the jury to infer that he conspired to sell drugs because it would be lucrative, not because of his character. That purpose doesn't run afoul of Rule 404(a).

*Fourth*, Delgado argues that the district court erred because it didn't give a limiting instruction before the probation officer's testimony. Delgado didn't ask the district court for that instruction, so we review this argument for plain error. *United States v. Fraser*, 448 F.3d 833, 841 (6th Cir. 2006). Although the district court didn't give a limiting instruction before the probation officer testified, it did give one in the final jury charge, which mitigated the danger of any unfair prejudice. *See United States v. Clark*, 24 F.4th 565, 579 (6th Cir. 2022). And Delgado hasn't identified any case holding that a district court errs when it gives a limiting instruction in the jury charge but not before a witness's testimony. *See United States v. Olano*, 507 U.S. 725, 734 (1993) (requiring a defendant to identify an error that is "clear under current law" to succeed on plain-error review). So Delgado can't establish that the district court plainly erred.

Because Delgado's statements to his probation officer are admissible under Rule 402 and no other rule bars their admission, the district court properly admitted that evidence.

2.

Next, Delgado challenges the government's introduction of three recorded phone calls in which he learned that one of his drug dealers had been robbed and encouraged that dealer to shoot up the thief's house. He argues that the calls were irrelevant, unfairly prejudicial, cumulative, and confusing. Each of these arguments fails.

Delgado first claims that the calls were cumulative of other evidence. *See* Fed. R. Evid. 403. As he points out, the calls were introduced alongside testimony from Delgado's co-

conspirators connecting him to the drug-trafficking enterprise and the firearms recovered by the police. But evidence isn't impermissibly cumulative just because another piece of evidence speaks to the same element of the offense. *Vasquez v. Jones*, 496 F.3d 564, 576 (6th Cir. 2007). Instead, evidence becomes impermissibly cumulative only when it adds so little probative value that "its contribution to the determination of truth would be outweighed by its contribution to the length of the trial." *United States v. Love*, 254 F. App'x 511, 518 (6th Cir. 2007) (quotation omitted). Although witnesses testified about Delgado's involvement, those three recorded calls provided direct evidence that Delgado orchestrated parts of the operation. Because the calls provided direct evidence of the conspiracy, they weren't impermissibly cumulative.

Delgado also argues that the calls unfairly prejudiced him by linking him to an uncharged "attempted homicide." Appellant's Br. at 47. But the probative value of the calls outweighs any risk of unfair prejudice. *See* Fed. R. Evid. 403. The calls provide direct support for the charges in the indictment, revealing the extent of Delgado's involvement and his connection to the drugs and guns in the conspiracy. In particular, the calls show that Delgado—not his co-conspirators—possessed the fully automatic rifle and extended magazines supporting two counts of the indictment. They also confirm that Delgado viewed the kilos of cocaine sold from his house as belonging to him. And they speak directly to Delgado's financial motive for drug dealing—he was preoccupied with "losses" to his business and willing to take substantial steps to mitigate them. R. 777, Pg. ID 5612–13.

Delgado contends that the calls were unfairly prejudicial because they "paint[ed] [him] in the worst light possible by involving him in a possible attempted homicide." Appellant's Br. at 47. "But evidence painting a defendant in a bad light isn't the same as evidence causing unfair prejudice." *Page*, 163 F.4th at 397. Of course, the government's goal is to introduce evidence

that undermines the defense in some way—most evidence pointing to guilt does just that. Unfair prejudice arises only when the evidence encourages the jury to decide the case on an improper basis. *United States v. Mercer-Kinser*, 149 F.4th 870, 881–82 (6th Cir. 2025). Here, the probative facts from the calls—Delgado owned the guns and magazines and dealt cocaine—provided a proper basis for the jury's decision. And they were intertwined with the details of the potential attempted homicide. Because the probative value of that information outweighed the potential for unfair prejudice, the district court didn't abuse its discretion by admitting the calls.

Finally, Delgado argues that his involvement in the possible attempted murder invited impermissible inferences about his character. In general, courts may not admit evidence that would "lure the factfinder into . . . 'generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged.'" *Asher*, 910 F.3d at 862 (quoting *Old Chief*, 519 U.S. at 180); *see* Fed. R. Evid. 404(b). But the recorded calls didn't encourage the jury to infer that Delgado's bad character predisposed him to commit the charged crimes. Rather, the calls directly supported the charges against Delgado—he dealt drugs and owned illegal guns. *United States v. Sumlin*, 956 F.3d 879, 889–90 (6th Cir. 2020). Delgado's request to shoot up the house was "inextricably intertwined" with his discussion of the drugs and guns. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Because the calls were relevant to Delgado's charged offenses, the district court correctly admitted them.

What's more, the district court instructed the jury that it could consider evidence of Delgado's other acts only for "intent, motive or opportunity." R. 776, Pg. ID 5381. This instruction mitigated the potential for unfair prejudice and prevented the jury from deciding the case on an improper basis. *Clark*, 24 F.4th at 579.

In sum, the district court didn't err by admitting either Delgado's statements to his parole officer or his phone calls with his co-conspirators.

C.

Finally, Delgado argues that the district court abused its discretion by imposing a procedurally unreasonable sentence. *See United States v. Hall*, 632 F.3d 331, 335 (6th Cir. 2011). A sentence is procedurally unreasonable if, for example, the district court failed to calculate the defendant's Guidelines range. *Gall v. United States*, 552 U.S. 38, 51 (2007).

Delgado now voices a concern that he didn't raise below: The district court failed to expressly mention his "criminal history score, his total offense level, or the three sentencing enhancements" applied to his total offense level during sentencing. Appellant's Br. at 51–52; *see also* Reply Br. at 18. But the district court asked Delgado if he had any objections at the end of sentencing, and he didn't raise this argument. So we review for plain error. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). Under that standard, we reverse only if the district court committed an obvious or clear error that affected Delgado's substantial rights and the fairness of the proceedings. *Id.*

Based on Delgado's extensive history of drug crimes, the U.S. Probation Office calculated a Guidelines range of 780 months' to life imprisonment. That range included mandatory minimum sentences for some of the counts running consecutively, to which Delgado objected both before and at sentencing.[1] After discussion at the sentencing hearing, the government agreed that two of

---

[1] The third superseding indictment charged Delgado with two separate counts of possessing firearms in furtherance of drug-trafficking crimes. *See* R. 647, Pg. ID 3707–08. Under our caselaw "a defendant has committed only a single violation of § 924(c)(1) when he uses multiple firearms in relation to a single drug trafficking offense." *United States v. Taylor*, 13 F.3d 986, 992 (6th Cir. 1994). Because the two counts relied on the same underlying offense, Delgado shouldn't have been convicted of and sentenced on both counts. *Id.* at 994 ("Where the indictment charges a single predicate offense, a court may not enter a judgment of conviction against a defendant, and may not sentence a defendant, for multiple § 924(c) counts in relation to that single predicate offense."). Ordinarily, this error would require us to remand to the district court to either vacate Delgado's sentence on one of the two counts or merge them,

the counts should run concurrently for a Guidelines range of 720 months' to life imprisonment. The district court summarized the government's view that Counts 4 and 5 should run concurrently, then asked if Delgado had any objections "on that point." R. 760, Pg. ID 4581. Delgado replied, "Oh, absolutely not, Judge. We certainly concur with that position." *Id.* Delgado then went on to reassert a separate argument regarding the functioning of certain mandatory minimums. Ultimately, the district court imposed "a [G]uideline[s] sentence" of 720 months' imprisonment. *Id.* at 4590.

During this colloquy, however, the district court never actually calculated Delgado's Guidelines range. In general, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49; *Rosales-Mireles v. United States*, 585 U.S. 129, 133 (2018). That remains true even when there's "no disagreement among the parties as to the correctness of the . . . suggested Guidelines range and findings of fact." *United States v. Grams*, 566 F.3d 683, 685–86 (6th Cir. 2009) (per curiam). So a district court's failure to explicitly calculate a defendant's Guidelines range constitutes procedural error. *See, e.g.*, *United States v. Peebles*, 624 F.3d 344, 347 (6th Cir. 2010). That's the case here.

But that error doesn't automatically warrant reversal. *Vonner*, 516 F.3d at 386. Under plain-error review, a district court's error must also affect the defendant's substantial rights and the integrity of the proceedings. *Id.* A district court's error affects a defendant's substantial rights

---

and re-sentence accordingly. *See United States v. McNeil*, 106 F. App'x 294, 305–06 (6th Cir. 2004) (discussing the proper remedy for multiple § 924(c) convictions). But Delgado never argued that the two counts should have been merged or that one should have been dismissed. *See* Oral Arg. at 32:44–33:05. He forfeited this claim by failing to raise it before the district court or in any of his briefing on appeal. *See* Fed. R. Crim. P. 12(b)(3)(B)(ii); *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331 (6th Cir. 2009). And even when invited to raise it during argument, he explained that "the district judge ran [the counts] concurrent anyway," so they could "not have practically made any difference" to Delgado's sentence. Oral Arg. at 08:27–08:30, 09:07–09:10. In light of Delgado's waiver at oral argument, we won't *sua sponte* remedy the error here.

only if there's "a reasonable probability that, but for the court's failure to calculate [his] Guidelines sentencing range, the outcome of the proceeding would have been different." *United States v. Tobias*, 101 F.4th 473, 482 (6th Cir. 2024) (citation modified). So we don't require a do-over for the district court to utter the Guidelines range if the record makes clear that the court would impose the same sentence again.

Here, vacating Delgado's sentence wouldn't result in a different outcome. The Government conceded that Delgado's proper Guidelines range was 720 months' to life imprisonment. The district court then imposed "a [G]uideline[s] sentence" of 720 months at the bottom of that range, making clear that it rejected the higher range the Probation Office had calculated. R. 760, Pg. ID 4590. In its statement of reasons, the district court confirmed that it calculated the Guidelines range as 720 months' imprisonment to life. Although the court didn't explicitly address Delgado's argument that he should face a mandatory minimum of only 30 years, that argument is squarely foreclosed by our precedent and thus couldn't lead to a different result on remand. *See United States v. Jolivette*, 257 F.3d 581, 586 (6th Cir. 2001). On appeal, Delgado doesn't argue that the Guidelines range of 720 months' to life imprisonment is incorrect or offer reasons his sentence would be different the second time around.[2] Indeed, if we were to vacate Delgado's sentence, the district court would simply state the Guidelines range of 720 months' to life imprisonment and then impose the exact same sentence.

All told, the district court's procedural error didn't affect Delgado's substantial rights, so he hasn't established plain error.

---

[2] Though Delgado never identifies specific errors with the calculation of his Guidelines range, he comes close to objecting to the two-level enhancement applied to his sentence under U.S.S.G § 2D1.1(b)(2). *See* Reply Br. at 20 ("Nothing at all was said about Mr. Delgado's objection to one of the sentence enhancements, which appeared to go unaddressed."). But his Guidelines range would've been the same whether his offense level was 38 (without the enhancement) or 40 (with the enhancement). So the district court couldn't have affected Delgado's substantial rights by adding the two-level enhancement.

\* \* \*

We affirm.